UNITED STATES of America, Appellee,

v.

**Soeung CHHUNN, Appellant.**

No. 93–2777.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1993.

Decided Dec. 8, 1993.

Peter A. Cahill, Wayzata, MN, for appellant.

D. Gerald Wilhelm, Asst. U.S. Atty., Minneapolis, MN, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, BEAM, Circuit Judge, and BOGUE,[*] Senior District Judge.

RICHARD S. ARNOLD, Chief Judge.

The defendant in this case, Soeung Chhunn, was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and § 924(a)(2). On appeal, he argues that the handgun the police seized from his car was inadmissible at trial, because the police lacked a reasonable and articulable suspicion for stopping him. He also contends that the police were motivated, at least in part, by his race when they decided to stop him. The Magistrate Judge [1] recommended denial of Chhunn's motion to suppress the handgun, holding that the police did have a reasonable and articulable suspicion when they stopped Chhunn's car. The District Court [2] agreed, and so do we.

## I.

On September 13, 1992, three Asian males wearing ski masks and dark gloves robbed the Broadway Pizza restaurant in Apple Valley, Minnesota. The three men forced the manager of the restaurant into a recreational vehicle, and threatened him with a sawed-off shotgun and a handgun. After being threatened, the manager turned over the money in the restaurant's safe.

The Apple Valley police investigated the robbery. In the course of their investigation, they discovered that Chhunn, an Asian male and a former employee of the restaurant, had been convicted of an armed robbery of a convenience store near Rochester, Minnesota, in 1991. During that robbery, Chhunn had fired a sawed-off shotgun three times. After obtaining this information, the Apple

---

[*] The Hon. Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable J. Earl Cudd, United States Magistrate Judge for the District of Minnesota.

2. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

Valley police began to focus their investigation on Chhunn.

Shortly after the Broadway Pizza robbery, the police placed Chhunn under surveillance. On October 2, 1992, a team of six cars began following Chhunn, when he left his home in Rochester. They followed him to his place of employment, Domino's Pizza, and then to a local park where he met with twenty to thirty Asian men. The men were wearing red, a color which symbolizes the Red Cambodian Bloods, an Asian street gang.

Chhunn left the park, and the police followed him to two residences where he picked up two other Asian males and left Rochester heading north on the highway. While following Chhunn, the officers noticed that he appeared to be engaging in counter-surveillance driving. For example, Chhunn pulled off the road for a few seconds, waited for cars to go by, and then pulled back on the road. When Chhunn entered the city of Rosemount, he began driving into cul-de-sacs and other roads, making it difficult for the officers to follow him and maintain their secrecy at the same time. During this time, the officers also learned that, that night, in Rochester, someone had stolen a recreational vehicle similar to the one used in the Broadway Pizza robbery.

In order to prevent detection, Sergeant Kent Switzer ordered the surveillance team to disperse. One of the team members, Officer James Eagle, pulled into the entrance of a camp, turned his headlights off, and backed his unmarked car into a single-lane, dead-end road.

Just after Eagle pulled onto this road, he saw the defendant's white Chevette enter the park. Chhunn drove directly down the dead-end road toward Eagle's car. His headlights illuminated Eagle's car. Eagle feared for his safety, because he knew about Chhunn's prior arrest for armed robbery and the second robbery leading to that evening's surveillance. In addition, because Eagle was in a single-lane, dead-end road, he had no avenue of escape. Thus, he radioed for help and began backing his car down the road, away from Chhunn, at approximately twenty to thirty miles per hour.

Sergeant Switzer responded to Eagle's request for help, radioed for uniformed assistance, and blocked the defendant's car with his squad car. He then ordered Chhunn and the passengers out of the car at gunpoint. By the time Switzer arrived, Chhunn had turned his car around and was trying to leave the camp.

Other officers joined Eagle and Switzer and took the passengers aside. Eagle looked inside the car and saw a full-face ski mask in the rear passenger area and a pair of dark colored gloves on the dashboard. He asked Chhunn what the mask was for, and Chhunn said he used it for playing football in the cold. The temperature that evening was warm.

After this brief discussion with Chhunn, Eagle made a preliminary search of the car. He felt a hard object in the driver's seat which was consistent with the size and shape of a weapon. He then lifted up the fabric seat cover and found a handgun concealed underneath it. At this point, the officers secured the car and obtained a search warrant.

## II.

Chhunn argues that police lacked a reasonable articulable suspicion for stopping him and that, therefore, the gun the police found as a result of the stop is "fruit of the poisonous tree" and should have been suppressed. We review a District Court's denial of a motion to suppress for clear error. *United States v. Williams*, 981 F.2d 1003, 1005 (8th Cir.1992). When applying this standard, we give particular deference to the fact finder, who had the opportunity to observe the demeanor and credibility of the witnesses. *United States v. Wallraff*, 705 F.2d 980, 987 (8th Cir.1983).

The Fourth Amendment protects citizens from unreasonable searches and seizures. Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), police officers may briefly detain and ask questions of people whom they reasonably suspect of criminal activity. *Id.* at 20–23, 88 S.Ct. at 1979–80. This rationale extends to stops of automobiles, when the police have a reason-

able suspicion that the occupants are violating the law. *United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985).

 The standard for reasonable suspicion is less demanding than that for probable cause; it requires only "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Martin,* 706 F.2d 263, 265 (8th Cir.1983). To decide whether the police met the reasonable-suspicion standard, we look to all the circumstances and the collective knowledge of the officers involved in the stop. *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Wallraff, supra,* at 988. The facts the police may consider include those based on their own observations, police reports, and patterns of particular types of lawbreakers. *Cortez, supra,* 449 U.S. at 418, 101 S.Ct. at 695; *Wallraff, supra,* at 989. Moreover, when deciding whether to stop someone, the police may rely on facts which, under other circumstances, might give an appearance of innocence. *Wallraff, supra,* at 988.

 Here, the police had ample reason for a *Terry* stop. Chhunn had a prior armed-robbery conviction and was a suspect in another recent armed robbery. He was a former employee of the Broadway Pizza restaurant and was of the same origin as the robber in that case. Moreover, both the robbery for which he was convicted and the one for which he was a suspect involved sawed-off shotguns.

On the night in question, Chhunn was under surveillance as a suspect for the Broadway Pizza robbery. During that time, the police observed him meet with members of a suspected street gang and pick up two other Asian males; the police knew that three Asian males had committed the pizza robbery. Chhunn attempted to evade the surveillance by pulling off and on the road and into cul-de-sacs. Further, at some point during the evening, the police learned that someone had stolen a recreational vehicle that night which was similar to the one used in the pizza robbery, and that the vehicle was stolen in Chhunn's hometown.

 Moreover, when Eagle attempted to avoid detection by pulling into the camp entrance, Chhunn followed him and appeared to drive straight at him down a single-lane, dead-end street. At the time when Chhunn was driving straight at Eagle, Eagle knew that Chhunn might have spotted members of the surveillance team, and that Chhunn had fired a sawed-off shotgun three times in the armed robbery he had committed. All of these factors combined to create a reasonable suspicion sufficient for Eagle to request help and to stop Chhunn's car. The fact that Chhunn was Asian was not used improperly. It was used not as a stereotype, but only as one relevant fact from which reasonable inferences could be made.

Affirmed.