# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-1063

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| Luis Carlos Gonzales, | * | of Nebraska. |
| a/k/a Juan M. Gonzales, | * | |
| a/k/a Robert Gonzales, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 15, 2000

Filed: August 14, 2000

_____

Before BOWMAN, FLOYD R. GIBSON,[1] and MORRIS  SHEPPARD ARNOLD,
Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Luis Carlos Gonzales pleaded guilty to conspiring to distribute marijuana, *see*
21 U.S.C. § 841(a)(1), *see also* 21 U.S.C. § 846, 18 U.S.C. § 2(a).  He appeals,

_____

[1]Complications from an automobile accident have prevented Judge Gibson from
reviewing this opinion prior to its being filed.

arguing that the district court[2] committed error by denying his motion to suppress and by sentencing him as a career offender. We affirm.

## I.

Leslie Boles was driving a truck eastbound when a Nebraska state trooper stopped him for bypassing a weighing station. After being pulled over, Mr. Boles informed the trooper that his driver's license had expired and that he was transporting his girlfriend's furniture from Texas to Chicago. He also claimed that his girlfriend had the truck's lease agreement, that her name was Sandra Caballero, and that she was driving ahead of him in a white Ford Bronco with New Mexico plates.

A consensual search of the truck uncovered over 1,000 pounds of marijuana. Mr. Boles was taken to the Nebraska State Patrol office where an investigator informed him of his *Miranda* rights before interviewing him. The investigator testified at the suppression hearing that Mr. Boles "decided that he would come clean and tell the truth." Mr. Boles admitted to knowing that his truck contained marijuana, told the investigator that Mr. Gonzales and Sandra Carrion were his accomplices, and provided a detailed description of the vehicle in which they were traveling.

Trooper William Leader testified at the suppression hearing that he and a colleague received information (ultimately derived from the investigator) that they were to look for a "red GM type pickup with New Mexico plates" headed eastbound on Interstate 80, that the vehicle had New Mexico license plate number 514 HMT, that there would be a male and a female in the vehicle, that the male was named Gonzales, and that there was a cell phone in the vehicle. Trooper Leader also received information that the pickup was "escorting" another vehicle that had been stopped with a large quantity of marijuana. Trooper Leader thereafter identified and then stopped

---

[2]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

a vehicle headed eastbound on Interstate 80 that matched exactly the description that he had been given.

Sandra Carrion was driving, and Mr. Gonzales was the passenger. Trooper Leader asked for Ms. Carrion's driver's license and looked inside the vehicle, where he saw what he believed to be one marijuana cigarette on the passenger-side armrest. After asking Mr. Gonzales to exit the vehicle, Trooper Leader then saw what he believed to be two more marijuana cigarettes on the passenger-side armrest. Trooper Leader also saw a cell phone in the vehicle. Trooper Leader concluded that he had probable cause to arrest Mr. Gonzales and Ms. Carrion for their involvement in the distribution of controlled substances and therefore took them into custody.

Mr. Gonzales argues that Trooper Leader lacked reasonable suspicion for the initial stop, and that he had no probable cause justifying the arrest. We review the district court's findings of fact for clear error, and review *de novo* the determination of the existence of reasonable suspicion. *See United States v. Eustaquio*, 198 F.3d 1068, 1070 (8th Cir. 1999).

## II.

Turning first to whether Trooper Leader's initial stop of the car was supported by reasonable suspicion, *see generally Thomas v. Dickel*, 213 F.3d 1023, 1024-25 (8th Cir. 2000), we begin with the observation that an investigative stop is constitutional if the police have a reasonable suspicion "that the person stopped is, or is about to be, engaged in criminal activity," *United States v. Cortez*, 449 U.S. 411, 417 (1981). Reasonable suspicion requires " 'a particularized and objective basis for suspecting the person stopped of criminal activity," *Ornelas v. United States*, 517 U.S. 690, 696 (1996), quoting *Cortez*, 449 U.S. at 417; *see also Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), but the "level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause," *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

Mr. Gonzales argues that Mr. Boles had lied to the troopers before the discovery of the marijuana and that the information he supplied during his interview therefore was not trustworthy. Although Mr. Boles at first provided the troopers with incorrect information, it is plain that he did so in an effort to convince them that he and his girlfriend were engaged in innocent activities. After the marijuana was discovered and Mr. Boles was taken to the police station and interviewed, he "c[a]me clean" and provided the police with the detailed information concerning his accomplices that Trooper Leader later used to identify and stop the suspect vehicle. We can think of no logical purpose that Mr. Boles would be serving by admitting, once in custody, to having lied, only to follow up that lie with another one concerning precisely the same subject matter. We therefore believe that the circumstances surrounding his confession support a conclusion that the information that he provided was reasonably trustworthy.

As the Supreme Court pointed out in *Alabama v. White*, 496 U.S. 325, 331 (1990), if an "informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." Mr. Boles described in detail his accomplices' vehicle and accurately predicted that a truck fitting its description would be driving eastbound on Interstate 80, *see id.* at 332. We believe that the information provided by Mr. Boles, and the context in which the information was given, contained sufficient indicia of reliability. In light of all of the circumstances and the collective knowledge of the troopers involved in the stop, *see United States v. Chhunn*, 11 F.3d 107, 110 (8th Cir. 1993), we conclude that Trooper Leader's investigatory stop of the vehicle was supported by reasonable suspicion. *See generally Ornelas*, 517 U.S. at 696.

## III.

Having determined that Trooper Leader's investigatory stop was lawful, we consider next whether he had probable cause to arrest Mr. Gonzales. Probable cause to arrest exists if, at the moment that an arrest was made, the facts and circumstances

within the arresting police officer's knowledge were sufficient to support a prudent person's belief that the person arrested was committing a crime. *See Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000). Probable cause may be based on the collective knowledge of all of the law enforcement officers involved in an investigation if, as here, some degree of communication exists between them. *See United States v. Twiss*, 127 F.3d 771, 774 (8th Cir. 1997).

Mr. Boles provided a detailed description of his accomplices in circumstances where there was no reason to think that he was lying, and all of the information supplied by Mr. Boles was corroborated by Trooper Leader after he pulled over the suspect vehicle. Mr. Boles's description contained factual details that were not easily discovered without "inside" knowledge, and the corroboration of this information made it more likely that Mr. Gonzales was in fact involved in the illegal activity. *See generally United States v. Brown*, 49 F.3d 1346, 1349-50 (8th Cir. 1995). We note, moreover, that Trooper Leader discovered marijuana cigarettes on Mr. Gonzales's armrest, which provided additional support for an objectively reasonable belief that Mr. Gonzales was involved in the illegal delivery of marijuana. We believe, therefore, that Mr. Gonzales's warrantless arrest was supported by probable cause. *See generally Pace*, 201 F.3d at 1055.

IV.

Mr. Gonzales also argues that the district court committed error by sentencing him as a career offender. We review the sentencing court's factual determinations for clear error and its interpretation of the federal sentencing guidelines *de novo*. *See United States v. Allegree*, 175 F.3d 648, 651 (8th Cir. 1999), *cert. denied*, 120 S. Ct. 388 (1999).

The parties agree that Mr. Gonzales is a career offender under U.S.S.G. § 4B1.1 if he had "at least two prior felony convictions of ... a controlled substance offense." Mr. Gonzales does not dispute a 1992 felony conviction for marijuana distribution. His

argument instead concerns a 1996 guilty plea in New Mexico state court. Although he entered that plea over four years ago, he has not yet been sentenced, and Mr. Gonzales argues that the conviction therefore cannot be considered for purposes of determining career offender status. We disagree.

The section of the federal sentencing guidelines that provides definitions for § 4B1.1 states that "[t]he date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*," *see* § 4B1.2(c). Application note 3 of § 4B1.2 provides, moreover, that "[t]he provisions of § 4A1.2 ... are applicable to the counting of convictions under § 4B1.1," and § 4A1.2(a)(4) in turn states that "[w]here a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted as if it constituted a prior sentence." We believe, therefore, that an unsentenced guilty plea is a "prior conviction" for purposes of § 4B1.1.

Mr. Gonzales argues in the alternative that he is not a career offender because the actual conduct leading to his New Mexico guilty plea did not involve the sale of a controlled substance, but instead involved the sale of a brick and a telephone book to an undercover officer. Mr. Gonzales, however, pleaded guilty to two different offenses in New Mexico, one of which was the distribution of marijuana in violation of N.M. Stat. Ann. § 30-31-22.A(1), which, according to the presentence report, "involved approximately 2 pounds of marijuana." Regardless of the nature of the other offense, Mr. Gonzales has shown nothing that would undermine the fact that one of the offenses was a "controlled substance offense" as defined by § 4B1.2(b). We therefore affirm the district court's decision to sentence him as a career offender.

V.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.