# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2889

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Robert Gillette, | * | District of Missouri. |
| | * | |
| Appellant. | * | |

_____

Submitted: January 9, 2001

Filed: April 16, 2001

_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and ALSOP,[1]
District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Robert Gillette appeals his conviction for conspiring to manufacture methamphetamine, *see* 21 U.S.C. § 841(a)(1), § 846, contending that the trial court[2] should have suppressed a methamphetamine lab that police seized from the bed of his

---

[1]The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

pickup truck and Mr. Gillette's subsequent statements regarding his knowledge of the lab. We affirm.

## I.

Mr. Gillette was charged with conspiracy as a result of an investigation that occurred at the home of Jeffrey Croft. Acting upon an anonymous tip of drug activity at Mr. Croft's home, Deputy Craig Lambert and Detective Dan Kriteman went to the Croft home to investigate. Upon arrival, the officers noted several vehicles parked outside the Croft home, including Mr. Gillette's F-150 pickup. The officers then informed Mr. Croft of the purpose of their visit, and asked everyone in the house to step outside. In all, there were approximately seven adults and two children in the house at the time, including Mr. Gillette and his wife. After hearing noises coming from the house, Deputy Lambert asked Mr. Croft for permission to enter the house. Mr. Croft agreed, and while Deputy Lambert was inside the house, he saw acetone and gas masks, items associated with the manufacture of methamphetamine.

Detective Kriteman, meanwhile, prepared a form that requested permission from Mr. and Mrs. Croft to search the residence, several outbuildings, some junked cars, and the F-150 pickup. Mr. and Mrs. Croft signed the form and did not disclaim ownership of the pickup. Detective Kriteman testified during the suppression hearing that he believed that the truck belonged to the Crofts, but he also testified that his plan was to ascertain the ownership of each vehicle on the premises before searching that vehicle. While Detective Kriteman was searching the house, however, Deputy Darrell Smithson, in response to a call for backup, arrived on the scene and began to search the vehicles. During his search, Deputy Smithson discovered components of a methamphetamine lab inside trash bags in the bed of Mr. Gillette's truck. This evidence, as well as Mr. Gillette's admission to Deputy Lambert that he knew that the lab was in his truck, served as the primary proof of his involvement in the conspiracy.

II.

Mr. Gillette maintains that the methamphetamine lab should have been suppressed because Deputy Smithson did not have a valid basis for his search of the pickup. Following a hearing, a magistrate refused to suppress the evidence, finding that Deputy Smithson relied on the third-party consent given by the Crofts; the trial court accepted the magistrate's recommendation. While the factual findings underlying the denial of a motion to suppress are reviewed for clear error, we review *de novo* the ultimate question of whether a fourth amendment violation has occurred. *See United States v. Clayton*, 210 F.3d 841, 845 (8th Cir. 2000).

Had Detective Kriteman himself searched Mr. Gillette's pickup, we think that the search would have clearly been valid. Although the Crofts did not have actual authority to consent to a search of the pickup, the search would have been valid if a reasonable officer would have been justified in believing that the Crofts had authority to consent to the search. *See Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990); *see also United States v. Czeck*, 105 F.3d 1235, 1239 (8th Cir. 1997). We think that Detective Kriteman would have been justified in believing that the Crofts had such authority, because Mr. Gillette's pickup was parked next to the farmhouse, closer to the house than any other vehicle, and the Crofts did not deny ownership of the pickup when it was listed on the consent form. Under these circumstances, we think a belief that the Crofts owned the pickup would have been reasonable, thus validating a search by Detective Kriteman.

The search that actually occurred in this case, however, was conducted not by Detective Kriteman but by Deputy Smithson. There is no evidence that Deputy Smithson was informed of the consent that the Crofts gave; the inference from the record, in fact, is that Deputy Smithson simply arrived on the scene and immediately began to search vehicles. A question before us, therefore, is whether we may impute Detective Kriteman's knowledge of the consent form to Deputy Smithson: If we may,

Deputy Smithson would be treated as having the same knowledge as Detective Kriteman, thus validating his search for the reasons that we explained earlier.

Where officers work together on an investigation, we have used the so-called "collective knowledge" theory, *United States v. Gonzales*, 220 F.3d 922, 925 (8th Cir. 2000), to impute the knowledge of one officer to other officers to uphold an otherwise invalid search or seizure. Under this rationale, the validity of a search "may be based on the collective knowledge of all of the law enforcement officers involved in an investigation if ... some degree of communication exists between them," *id. See also United States v. Morales*, 238 F.3d 952, 953 (8th Cir. 2001), and *United States v. Twiss*, 127 F.3d 771, 774 (8th Cir. 1997). The requirement that there be a degree of communication serves to distinguish between officers functioning as a "search team," *United States v. O'Connell*, 841 F.2d 1408, 1419 (8th Cir. 1988), *cert. denied*, 487 U.S. 1210 (1988), 488 U.S. 1011 (1989), and officers acting as independent actors who merely happen to be investigating the same subject.

In this case, since Deputy Smithson was called to the scene to assist in an investigation that was ongoing, we believe that there was the requisite degree of communication between him and the officers on the scene to make him a member of their team and thus to impute to him the knowledge that the team had acquired. Because Deputy Smithson was not an independent actor, he was privy to the consent to search the pickup truck that Mr. Croft gave to Deputy Kriteman and the fruits of that search were therefore legally acquired. The district court thus correctly denied Mr. Gillette's motion to suppress the methamphetamine lab.

### III.

Because the lab was legally seized, Mr. Gillette's argument that his admission that he owned the lab was "fruit of the poisonous tree," *Wong Sun v. United States*, 371 U.S. 471, 488 (1963), must fail. Mr. Gillette was given his *Miranda* warnings, *see Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966), before he made his admission,

-4-

moreover, and there is no showing that his statement was in any way involuntary, so there is no legal basis upon which the contents of the statement may be suppressed. The trial court therefore correctly denied Mr. Gillette's motion to suppress his admission.

## IV.

For the foregoing reasons, the judgment of the trial court is affirmed.


ALSOP, District Judge, dissenting.


I agree with the majority's recitation of the facts and with their conclusion that Detective Kriteman reasonably could have searched Mr. Gillette's vehicle based on the Crofts' third-party consent. However, the search in question was not conducted by Detective Kriteman but instead by Deputy Smithson. I cannot agree that the "collective knowledge" theory may be stretched so far as to impute knowledge of the third-party consent to Deputy Smithson. Because I see no other ground on which to affirm the conviction, I respectfully dissent.


This Court has recognized for some time that all the facts necessary to establish probable cause for a warrantless search need not be within the personal knowledge of the officer performing the search. See, e.g., White v. United States, 448 F.2d 250, 254 (8th Cir. 1971) (holding that probable cause is evaluated based on the information collectively available to officers involved in an investigation). The purpose of this rule is to allow law enforcement officers to work as a team without requiring each member of the team to know every fact pertinent to the team's actions. United States v. Stratton, 453 F.2d 36, 37 (8th Cir. 1972). Although our cases applying this rule often refer to the "collective knowledge" of the officers, the term "collective knowledge" is misleading because as a practical matter individual officers cannot know anything collectively. Individual officers, on the other hand, can act collectively, and the real issue in our collective knowledge cases is whether a particular search or seizure is

reasonable within the meaning of the Fourth Amendment in light of any collective action in which two or more officers were engaging.

Collective action involves the exchange of information and instructions, and in most instances the collective knowledge theory simply allows one officer to accept facts or directives communicated by another officer at face value and to take appropriate action based on that communication. See, e.g., United States v. Gonzales, 220 F.3d 922, 924-25 (8th Cir. 2000) (holding that probable cause for an investigatory stop and warrantless arrest may be based in part on information communicated to the investigating officer); United States v. Twiss, 127 F.3d 771, 774 (8th Cir. 1997) (holding that an officer may order a warrantless search based only on information communicated from another officer). In order to ensure that the officers are acting collectively and not independently, "some degree of communication" regarding the pertinent subject matter must exist between the officers. United States v. Horne, 4 F.3d 579, 585 (8th Cir. 1993).

A small number of cases have relaxed the communication requirement when the officers involved were "working closely together" during the execution of a search warrant. United States v. O'Connell, 841 F.2d 1408, 1419 (8th Cir. 1988). In such cases, "we presume the officers have shared relevant knowledge which informs the decision to seize evidence or to detain a particular person, even if the acting officer is unable to completely and correctly articulate the grounds for his suspicion at the time of the search." Id. See also United States v. Wright, 641 F.2d 602, 606 (8th Cir. 1981) (upholding a seizure by one officer outside the scope of a search warrant because another officer involved in the search was aware of facts establishing probable cause). The rationale underlying this application of the collective knowledge theory is difficult to discern, although this Court recently emphasized that such an application is justified only if the evidence at issue was seized "in the presence of" the officer with knowledge of facts sufficient to establish probable cause. United States v. Blom, 242 F.3d 799, 808-09 (8th Cir. 2001). The emphasis on physical presence during the search suggests

that shared knowledge should be presumed only when two or more officers are working collectively in close proximity and it is reasonable to assume that the officers could have communicated the pertinent information during the course of their collective action.

The search of Mr. Gillette's vehicle cannot be squared with either of these lines of authority. The record shows, and the majority acknowledges, that Deputy Smithson came to the Croft residence without having previous knowledge of the investigation, merely in response to a request for backup. He began to search vehicles without receiving any instructions or information from any officer with knowledge of facts sufficient to justify a search. In addition, Detective Kriteman, who was in charge of the search, testified that he only "vaguely remembered" Deputy Smithson being on the scene and that Deputy Smithson's actions were not in accord with the search plan other officers were implementing. Another officer testified that Deputy Smithson "had taken it upon himself" to begin the search. Deputy Smithson was not called to testify. The mere fact that Deputy Smithson responded to a request for backup does not establish that he was engaging in collective action in any meaningful sense. The evidence instead compels the conclusion that Deputy Smithson acted entirely on his own and made an unreasonable warrantless search. The obvious drug-related activity of the defendant does not justify excusing this patent violation of the Fourth Amendment.

For those reasons, I would hold that the evidence seized from Mr. Gillette's vehicle was inadmissible as illegally obtained and that the inculpatory statements Mr. Gillette made immediately after the search also were tainted by the Fourth Amendment violation and therefore inadmissible under the rule of Wong Sun v. United States, 371 U.S. 471, 486 (1963). The government offered no other evidence in support of the conspiracy charge, and I accordingly would reverse the conviction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.