# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

───────────

No. 09-3928

───────────

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Leon Robinson, Jr., | * | |
| | * | |
| Defendant - Appellant. | * | |

───────────

Submitted: September 20, 2011
Filed: December 15, 2011

───────────

Before LOKEN, BEAM, and MURPHY, Circuit Judges.

───────────

LOKEN, Circuit Judge.

A jury convicted Leon Robinson, Jr. of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) after a handgun fell from his pants during a pat-down search following a traffic stop. Robinson appeals, arguing that the district court[1] erred in denying his motion to suppress because both the initial stop and the pat-down search violated his Fourth Amendment rights. Reviewing the district court's findings of fact for clear error and its determinations of probable cause and

───────────────

[1]The Honorable J. Leon Holmes, Chief Judge of the United States District Court for the Eastern District of Arkansas.

reasonable suspicion *de novo*, we affirm. United States v. Jones, 606 F.3d 964, 966 (8th Cir. 2010) (standard of review).

## I. The Initial Stop

Detective Matthew Thomas of the North Little Rock Police Department received an anonymous tip that three or four black males were in a maroon Cadillac that may contain firearms and property stolen from 2015 Franklin Street. Detective Thomas and other detectives drove to 2015 Franklin Street in an unmarked vehicle to investigate. En route, they saw a maroon Cadillac stopped in an alley with three black males in the front seat and merchandise in the back seat. The driver pulled away. Detective Thomas followed in his unmarked car for many blocks and saw the vehicle make turns without signaling. As department policy does not permit officers in unmarked vehicles to initiate traffic stops, Detective Thomas called Patrol and asked that a patrol car stop the Cadillac. When a patrol unit arrived, Detective Thomas followed the patrol car until it stopped the Cadillac.

On appeal, Robinson does not challenge the district court's ruling that Detective Thomas had probable cause to stop the Cadillac for one or more traffic violations. Though Detective Thomas did not make the traffic stop, Robinson also acknowledges a well-established Fourth Amendment principle: "When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication." United States v. Frasher, 632 F.3d 450, 453 (8th Cir.) (traffic stop), cert. denied, 181 L. Ed 2d 165 (2011); see United States v. Thompson, 533 F.3d 964, 969-70 (8th Cir. 2008) (arrest); United States v. Banks, 514 F.3d 769, 776 (8th Cir.) (plain view seizure), cert. denied, 553 U.S. 1100 (2008); United States v. Winters, 491 F.3d 918, 921 (8th Cir. 2007)

(Terry stop); United States v. Gillette, 245 F.3d 1032, 1034 (8th Cir.) (consensual search), cert. denied, 534 U.S. 982 (2001).

Robinson argues the district court erred in applying the collective knowledge doctrine because Detective Thomas testified that he told the Patrol dispatcher only that "I need some officers to stop this maroon Cadillac." Officer Matthew Roebuck, who made the stop, did not testify at the suppression hearing. Therefore, Robinson argues, the government failed to present evidence of what "the officer who actually made the stop knew when he stopped the Cadillac." The district court properly rejected this argument because it misconstrues the requirement that the collective knowledge doctrine only applies if there is "some degree of communication." This requirement "serves to distinguish between officers functioning as a 'search team' and officers acting as independent actors who merely happen to be investigating the same subject." Gillette, 245 F.3d at 1034 (citation omitted). We have never required that all the relevant collective knowledge of the team be communicated to the officer who made the stop, the arrest, or the search at issue. See Winters, 491 F.3d at 920-21; Gillette, 245 F.3d at 1034. Here, it is undisputed that Officer Roebuck did not act independently. When instructed to make the stop, Roebuck became part of Detective Thomas's "team" for purposes of the collective knowledge doctrine. The presence of Detective Thomas when the stop was made confirms this conclusion. See Banks, 514 F.3d at 776.

## II.  The Pat-Down Search

After Officer Roebuck stopped the Cadillac, he learned that the driver had a suspended driver's license and no proof of insurance. Roebuck ordered the driver and passengers out of the car and summoned a tow truck, and the officers searched the Cadillac to prepare for its towing and impoundment. Officer Kent Stewart arrived while the traffic stop was in process and took a "cover position" where he could

observe all the suspects "just in case something happens." Stewart testified at the suppression hearing that Robinson, standing near the car, was wearing baggy clothes like the other two men and "kept putting his hands in his pockets," "shuffling his feet," and "looking around," "trying not to be seen." When Officer Stewart advised Officer Roebuck that Robinson had not been patted down, Roebuck told Robinson, "You need to take your hands out of your pockets." Robinson complied but a few seconds later put his hands back in his pockets. Officer Roebuck told Robinson that if he continued to put his hands in his pockets, Roebuck would pat him down. Stewart heard Robinson say, "'go ahead,' or some type of affirmation to a safety search." As Roebuck patted Robinson down, Stewart saw a gun suddenly appear on the ground, having fallen from Robinson's pants.

Officers may conduct a protective pat-down search for weapons during a valid stop -- whether a traffic stop or an investigative Terry stop or a consensual stop -- when they have objectively reasonable suspicion that a person with whom they are dealing "might be armed and presently dangerous and criminal activity might be afoot." United States v. Davis, 202 F.3d 1060, 1063 (8th Cir.), cert. denied, 541 U.S. 883 (2000). In denying the motion to suppress, the district court concluded that the officers reasonably believed that their safety required a pat-down search because Robinson was wearing baggy clothes that can conceal a weapon and continued putting his hands in his pockets after being told not to do so. The court further found that Robinson consented to the pat-down search.

On appeal, again emphasizing that Officer Roebuck did not testify at the suppression hearing, Robinson argues that the record "is void of any activity which would lead an officer to fear for his safety." Like the district court, we disagree. As Fourth Amendment reasonableness is an objective standard, it was not essential that Officer Roebuck testify. See Thompson, 533 F.3d at 969. The totality of the circumstances -- the anonymous tip, the driver's lack of a valid license and insurance,

-4-

the discovery of a firearm in the passenger-side glove compartment during the pre-impoundment search, and Robinson's baggy clothing, nervous behavior, and refusal to keep his hands out of his pockets -- were more than enough to justify a protective pat-down search of Robinson.  See, e.g., United States v. Gilliam, 520 F.3d 844, 848 (8th Cir. 2008); United States v. Cornelius, 391 F.3d 965, 968 (8th Cir. 2004); Davis, 202 F.3d at 1063.

Robinson further argues that his consent to the search "if given was not voluntary."  This contention is without merit.  The district court credited Officer Stewart's testimony that Robinson said something like "go ahead" before the pat-down, a credibility finding that is "virtually unreviewable on appeal."  United States v. Green, 560 F.3d 853, 857 (8th Cir.), cert. denied, 130 S. Ct. 288 (2009).  Robinson did not argue to the district court that this consent was involuntary, and the suppression hearing record contains nothing suggesting that it was coerced.  The district court's alternative finding of a consensual pat-down was not clearly erroneous.

We affirm the judgment of the district court.

_____