PER CURIAM.
| granted. The court of appeal’s decision in State v. Weber, 12-2021 (La.App. 1 Cir. 6/27/13), 120 So.3d 328 (Crain, J., dissenting), is reversed, and defendant’s conviction and sentence for vehicular homicide in violation of La.R.S. 14:32.1 are reinstated.
The trial court did not err in denying defendant’s motion to suppress the results of a blood alcohol test performed on a sample of blood taken from him in the hospital without his express consent following an accident in which the truck occupied by defendant and two other persons collided with another vehicle, killing its driver, and sending all of the survivors to various nearby hospitals for treatment of their injuries. The two other occupants of the vehicle in which defendant was riding were conscious, although one of them was unable to speak, and gave consent to withdrawal of a blood sample for testing. The two investigating officers arrived on the scene after the survivors were removed by first responders and they initially could not determine who among the three occupants had been driving the truck. One officer not involved in the defendant’s blood draw did, however, |?run the license plate number on the scene of the accident and determined that defendant owned the truck.
*521 When an accident involving motor vehicles results in a fatality, the police need not have reasonable grounds to suspect that alcohol or drugs were involved to order a chemical test of the operator’s blood, urine, or other bodily substances, as to which the operator of the vehicle is deemed by law to give his consent. La.R.S. 32:681(A). The officer authorizing the test must, however, have “reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state.” La.R.S. S2:681(B). In the present case, for the majority the First Circuit panel, the police had only one chance out of three defendant was at the wheel of the truck when it collided with the victim’s vehicle and therefore did not have “reasonable grounds to believe that the unconscious person before [the authorizing officer] was the driver of the truck any more than either of the other two persons.” Weber at 12, 120 So.3d at 336. Dissenting, Judge Crain observed that “by the time that defendant’s blood was drawn, the officers knew there had been a fatality, that the truck had caused the fatality, and that three people including the defendant, occupied the truck at the time of the collision.” Id. at 1, 120 So.3d at 337 (Crain, J., dissenting). Under these “unique circumstances,” Judge Crain deemed that “the belief that one of the occupants was the driver constituted reasonable grounds to draw the defendant’s blood.” Id. at 2, 120 So.3d at 337 (footnote omitted).
There is a more particularized reason for subscribing to the conclusion reached by Judge Crain, which takes into account the highly evanescent nature of blood alcohol levels and the corresponding necessity of the police |3to act quickly to preserve potentially critical evidence as their investigation unfolds. The determination of whether the blood draw was justified under the circumstances entails a purely objective inquiry considering “all of the information known collectively to the law enforcement personnel involved in the investigation.” State v. Landry, 98-0188, p. 5 (La.1/20/00), 729 So.2d 1019, 1022 (citing and quoting United States. v. Klein, 93 F.3d 698, 701 (10th Cir.1996) (“Probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest.”) (citation and internal quotation marks omitted); United States v. Butler, 74 F.3d 916, 921 (9th Cir.1996) (“Probable cause can also be demonstrated through the collective knowledge of police officers involved in the investigation, even if some of the information known to the other officers is not communicated to the arresting officer.”)). The police had determined on the scene that defendant was the owner of the truck well before the draw of defendant’s blood was authorized. There was no testimony at the suppression hearing that the information with respect to defendant’s ownership of the truck was actually communicated to the officer who then authorized the blood draw from defendant. Testimony at the suppression hearing established, however, that both officers were on the scene and engaged in closing off the highway to permit the landing of an Air Medevac helicopter. The survivors had already been removed to two different hospitals but the deceased driver of the other vehicle was still in the car. Testimony further established that the two officers consulted with each other and with the supervisor on the scene before they went their separate ways to interview the survivors in an attempt to determine how the accident happened and to identify the driver of the truck.
|4Under these circumstances, it is fair to consider the two officers as part of a single investigative team operating in close concert and to impute one officer’s knowledge *522 that defendant was the owner of the truck to the officer who ultimately authorized the blood draw from defendant even in the absence of any affirmative evidence the actual communication took place. See United States v. Gillette, 245 F.3d 1032, 1034 (8th Cir.2001) (when officers working together as a team and some degree of communication between them exists, fair to impute the knowledge acquired by the team collectively to each of its members); see also 2 Wayne R. LaFave, Search and Seizure, § 3.5(c), p. 355, n. 90 (2012) (collecting cases). The purpose of requiring some degree of communication between the officers is to “distinguish between officers functioning as a search team and officers acting as independent actors who merely happen to be investigating the same subject.” Gillette, 245 F.3d at 1034 (citations omitted); see also United States v. Banks, 514 F.3d 769, 776 (8th Cir.2008) (“When officers function as a search team, it is appropriate to judge probable cause upon the basis of their combined knowledge, because ‘we presume that the officers have shared relevant knowledge which informs the decision to seize evidence or to detain a particular person.’ ”) (quoting United States v. O’Connell, 841 F.2d 1408, 1419 (8th Cir.1988)); United States v. Nafzger, 974 F.2d 906, 911 (7th Cir.1992) (“[W]hen officers are in communication with each other while working together at a scene, their knowledge may be mutually imputed even when there is no express testimony that the specific or detailed information creating the justification for a stop was conveyed....”) (citations omitted).
|fiIn the present case, reasonable grounds existed to order the blood draw from defendant because it is objectively reasonable to assume, even to a fair probability that might support a finding of probable cause, State v. Thompson, 02-0333, p. 8 (La.4/9/03), 842 So.2d 330, 336, the owner of a vehicle is also the driver. Cf. State v. Tozier, 2006 Me. 105, 905 A.2d 836, 838-39 (2006) (Courts “uniformly hold that an officer does not violate the Fourth Amendment by making a traffic stop when the officer randomly checks a license plate number of a vehicle on a public road, learns the owner’s license has been suspended or revoked, and observes no other circumstances that demonstrate the driver is not the vehicle’s owner.... These courts each concluded that it is reasonable to suspect that the driver of a vehicle is its registered owner, absence indications to the contrary.”) (citations omitted); State v. Vance, 790 N.W.2d 775, 781 (Iowa 2010) (While other people may drive an owner’s vehicle, “it is reasonable for an officer to infer the registered owner of the vehicle will do the vast amount of the driving.... Although this inference may be fallible, it is sufficiently reasonable to generate reasonable suspicion for an investigatory stop to resolve the ambiguity as to whether criminal activity is afoot.”) (citations omitted); State v. Owens, 75 Ohio App.3d 523, 599 N.E.2d 859, 860 (1991) (license plate check revealing owner of the vehicle had his license suspended provided reasonable suspicion to pull the vehicle over because “[i]t is reasonable to assume that the driver of a vehicle is most often the owner of the vehicle.”).
In the present case, the police thus had more than a random one in three chance that defendant was the driver of the truck. Of the three occupants in the vehicle, as the owner, defendant was far more likely than |finot to have been at the wheel of the truck at the time of the accident, as, in fact, the ongoing investigation subsequently determined. Once the police determined on the scene that defendant was the registered owner, the officers had reasonable grounds to draw his blood for analysis and it made no practical difference which *523 member of the team investigating the accident actually gave the authority for the blood draw. The trial court therefore correctly denied the motion to suppress and the court of appeal erred in overturning that decision. The ruling of the trial court is reinstated and with it, defendant’s conviction and sentence for vehicular homicide.