# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-1129

**STATE OF LOUISIANA**

**VERSUS**

**EBONE SHIRLEY WILSON**

\*\*\*\*\*\*\*\*\*\*

ON APPLICATION FOR WRIT OF SUPERVISORY REVIEW,
TENTH JUDICIAL DISTRICT COURT, NATCHITOCHES
PARISH, LOUISIANA, TRIAL COURT DOCKET
NOS. C24,957-A AND T27,295-A,
HONORABLE DESIREE DUHON DYESS,
DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, John E. Conery, and Van H. Kyzar,
Judges.

**WRIT DENIED.**

**Howard E. Conday**
**Law Offices of Howard E. Conday**
**113 South Drive, Suite #4**
**Natchitoches, LA 71457**
**(318) 238-1756**
**ATTORNEY FOR DEFENDANT/APPLICANT**
     **Ebone Shirley Wilson**

**Billy Joseph Harrington**
**Tenth Judicial District Attorney**
**Amanda McClung**
**Assistant District Attorney**
**200 Church Street, 2nd Floor**
**Natchitoches, LA 71457**
**(318) 357-2214**
**ATTORNEYS FOR RESPONDENT**
     **State of Louisiana**

**GREMILLION, Judge.**

Defendant, Ebone Shirley Wilson, was charged by bill of information filed in trial court docket number C24957-A on January 30, 2017, with vehicular homicide, a violation of La.R.S. 14:32.1. She was charged on the same date in trial court docket number T27295-A with driving left of center, a violation of La.R.S. 32:71; no safety belt, a violation of La.R.S. 32:295.1; and possession of open alcoholic beverages, a violation of La.R.S. 32:300.

A motion was filed on September 5, 2017, by which Defendant moved to suppress the results of a blood draw because the officers unlawfully advised her that she could not refuse consent, and no warrant for the blood draw was secured. Defendant argued that these actions were unconstitutional under the United States Supreme Court decisions in *Birchfield v. North Dakota*, __ U.S. __, 136 S.Ct. 2160 (2016), and *Missouri v. McNeely*, 569 U.S. 141, 133 S.Ct. 1552 (2013). The trial court denied the motion at a hearing held on October 12, 2017.

Defendant timely filed a writ application with this court. Therein, she seeks review of the trial court's ruling denying her motion to suppress. For the reasons that follow, we deny Defendant's writ application.

## ASSIGNMENTS OF ERROR

In her assignments of error, Defendant contends that the trial court erred in finding that the warrantless blood draw was justified because the United States Supreme Court has ruled that the Fourth Amendment does not permit warrantless blood tests incidental to an arrest for drunk driving, and that the trial court erred in finding that she voluntarily and validly consented to the blood draw.

**ANALYSIS**

Mixed findings of law and fact in motions to suppress are reviewed under the abuse of discretion standard. *State v. Everett*, 11-1311 (La.App. 3 Cir. 5/9/12), 89 So.3d 463. At the hearing on the motion to suppress, Defendant argued that if consent for the blood draw was given under the guise that there would be punishment for not consenting, the consent was not valid. Defendant further argued the officer unlawfully advised Defendant that she could not refuse the blood draw. The State admitted that police did not obtain a warrant to draw Defendant's blood.

Defendant cited *McNeely*, 569 U.S. 141, and *Birchfield*, 136 S.Ct. 2160, in support of her argument. In *McNeely*, the Supreme Court held that in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant.

There were three defendants in *Birchfield*. One of the defendants, Birchfield, was arrested for drunk driving and advised of his obligation under North Dakota law to undergo blood alcohol concentration testing and that refusing to submit to a blood test would lead to criminal punishment. Birchfield refused to let his blood be drawn and was convicted of a misdemeanor for his refusal. He appealed, arguing that the Fourth Amendment prohibited criminalizing his refusal to submit to the test. Another defendant, Beylund, was arrested for driving while impaired. He was read North Dakota's implied consent advisory, informing him that test refusal was a crime. Beylund then agreed to have his blood drawn. Given the test results, Beylund's driver's license was suspended for two years after an administrative hearing. He appealed, arguing that his consent to the blood test was coerced by the

2

officer's warning that refusing to consent would itself be a crime. In addressing these claims, the Supreme Court stated:

> Because breath tests are significantly less intrusive than blood tests and, in most cases, amply serve law enforcement interests, we conclude that a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving. As in all cases involving reasonable searches incident to arrest, a warrant is not needed in this situation.
>
> Having concluded that the search incident to arrest doctrine does not justify the warrantless taking of a blood sample, we must address respondents' alternative argument that such tests are justified based on the driver's legally implied consent to submit to them. It is well established that a search is reasonable when the subject consents, *e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and that sometimes consent to a search need not be express but may be fairly inferred from context, *cf. Florida v. Jardines*, 569 U.S. 1, ——— – ———, 133 S.Ct. 1409, 1415–1416, 185 L.Ed.2d 495 (2013); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. See, *e.g.*, [*Missouri v.*] *McNeely*, *supra*, at ———, 133 S.Ct. [1552], at 1565–1566 [(2013)] (plurality opinion); [*South Dakota v.*] *Neville*, [459 U.S. 553] at 560, 103 S.Ct. 916 [(1983)]. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.
>
> It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.
>
> . . . .
>
> [W]e conclude that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense.
>
> . . . .
>
> Petitioner Birchfield was criminally prosecuted for refusing a warrantless blood draw, and therefore the search he refused cannot be justified as a search incident to his arrest or on the basis of implied consent. There is no indication in the record or briefing that a breath test would have failed to satisfy the State's interests in acquiring

3

evidence to enforce its drunk-driving laws against Birchfield. And North Dakota has not presented any case-specific information to suggest that the exigent circumstances exception would have justified a warrantless search. Cf. *McNeely*, 569 U.S., at ———–——, 133 S.Ct., at 1567. Unable to see any other basis on which to justify a warrantless test of Birchfield's blood, we conclude that Birchfield was threatened with an unlawful search and that the judgment affirming his conviction must be reversed.

    . . . .

    Unlike the other petitioners, Beylund was not prosecuted for refusing a test. He submitted to a blood test after police told him that the law required his submission, and his license was then suspended and he was fined in an administrative proceeding. The North Dakota Supreme Court held that Beylund's consent was voluntary on the erroneous assumption that the State could permissibly compel both blood and breath tests. Because voluntariness of consent to a search must be "determined from the totality of all the circumstances," *Schneckloth*, *supra*, at 227, 93 S.Ct. 2041 we leave it to the state court on remand to reevaluate Beylund's consent given the partial inaccuracy of the officer's advisory.

*Id.* at 2185-86 (footnote omitted).

Phillip Tagliarino, formerly employed by the Louisiana State Police, testified at the hearing on the motion to suppress. He indicated that a traffic accident on November 15, 2016, resulted in the death of Derrik Williams. Defendant was transported to the hospital because of injuries from that accident. Tagliarino spoke to Defendant at the hospital and sought her version of what occurred. He testified that Defendant "had a strong odor of alcoholic beverage." He then stated, "When we got to that point, I advised her of her rights and proceeded with the paperwork, as required under a crash investigation." At the time he spoke to Defendant, Tagliarino was aware of the fatality. He did not have a warrant to draw Defendant's blood. When asked what he informed Defendant regarding the drawing of blood, Tagliarino stated, "We read the forms that are required to read, and I asked Ms.

4

Wilson if she would consent, which she did, and she signed the consent papers. I think she signed two different consent papers."

Tagliarino was questioned about State's Exhibit 1, a form regarding the arrestee's rights and notice of withdrawal of driving privileges. The form contained *Miranda* warnings and indicated that a blood test was administered. The form also contained a statement that Defendant had fifteen days from the date of her arrest to apply to the court for a hearing regarding her driver's license, and if a hearing was not requested, her license would be suspended for one year without eligibility for a hardship license. The collector's report that was part of the blood kit was admitted as State's Exhibit 2. Defendant signed that form, granting permission for the blood draw. Tagliarino testified that he read the forms to Defendant, and she indicated that she understood everything. Defendant did not state that she did not want to have her blood drawn and did not ask if she could decline to do so.

Tagliarino was further questioned:

Q. And you're . . . are you aware of the Louisiana Supreme Court law that says that even if she had not consented, that you would have been authorized to take blood in this case?

A. Yes, ma'am. I'm not familiar with the case law, but it is within our rights form that we do read.

Q. And you are familiar with that as part of your duties at Louisiana State Police at the time?

A. Yes, ma'am.

Q. Okay. But based on the fact that she signed these consent forms, that wasn't even something that you were. . .you weren't even seek . . . were you seeking to take her blood without her permission that day?

A. No, ma'am. I asked . . . I'll ask anybody that, if they'll voluntarily submit.

Q. And you believe her consent to be voluntary?

5

A. Absolutely.

The questioning of Tagliarino continued:

Q. So you're familiar with the state laws of Louisiana that gives implied consent when an individual is driving a vehicle, correct?

A. Yes, sir.

Q. Okay. And then you're also familiar with the laws that say that in regards to fatality, you don't actually need consent to draw for blood, correct?

A. Yes, sir.

Q. Do you make your subjects aware of that law?

A. Yes, sir, I read everything that's required.

Q. Okay. So did you make Ms. Wilson aware of those laws?

A. Yes, sir, I did.

Q. You did. Did you make her aware of those laws before she actually signed the consent form?

A. Yes, sir.

Q. Right. So, you basically told Ms. Wilson that by her driving that vehicle, it was implied that she was giving consent to submit to a chemical test, correct?

A. I read all the forms that she [sic] provided. The last thing I do is get the signature, and then we state that they understand.

Sergeant Paul Raines worked for the Louisiana State Police on November 15, 2016 and investigated the accident. He spoke to Defendant at the Natchitoches Parish Hospital. He recalled Tagliarino reading Defendant her rights from State's Exhibit 1, the arrestee's rights form and notice of withdrawal of driving privileges, and was present when the form was signed. Sergeant Raines filled out State's Exhibit 2, the collector's report from the blood kit. He was also present when

6

Defendant signed Exhibit 2. Sergeant Raines testified Defendant never indicated she did not consent, nor did she ask questions about whether she could refuse.

Sergeant Raines was questioned about consent to the blood draw:

Q. You're also familiar with state laws that say when there is some type of fatality involved, that individual can't really. . .they can't not consent to a blood draw, correct?

A. There is a form that we read when it a . . . when it's not a vehicle [sic] homicide case. Um, this form that we read, I believe it's 1, Exhibit 1, because we knew it was a vehicle [sic] homicide case, that portion is not on that form.

Q. It's not on which form?

A. The form that we read, that Trooper Tagliarino read.

Q. Okay. Did you advise her that it was in the implied consent?

A. No, we advise [sic] her what the State says we have to advise her on a vehicle [sic] homicide.

Q. What does the State say you have to advise?

A. That's what the . . . that form is a state form for vehicle [sic] homicide advice.

Q. So, you have less . . . less rights to advise when it's a homicide as opposed to a regular DUI?

A. I do what the State says do, sir.

Q. So, I know with the DUIs, it says that you have to tell them that their driving privileges can be suspended for refusing to submit to a chemical test, correct?

A. Yes, sir.

Q. And are you telling me that you did not let her know that situation?

A. We didn't read the rights for a DWI, we read the rights for a vehicle [sic] homicide.

Sergeant Raines indicated that Tagliarino was the first officer on the scene, and he would not know whether Tagliarino read Defendant her full rights before she was transported to the hospital.

After the testimony, the State argued Defendant consented to the blood draw, and there was no evidence that her consent was not voluntarily given. Defendant argued that warrantless blood draws were unlawful, and that a motorist could not be deemed to have consented to submit to a blood test on "pain of committing a criminal offense." Defendant further argued:

> She submitted to a blood test, not necessarily in the pain of committing a criminal offense, but it's the pain of receiving some type of criminal punishment if she doesn't consent to the blood test. You have the officer who was on the scene at the beginning who admitted that he told her about the implied consent laws and he told her that in the case of a fatality, she basically cannot say, "I don't consent." And that's why she consented. That is not voluntary consent.

The State countered that it was conjecture to say that Defendant consented to the blood draw because she thought she could not refuse. Defendant argued that the form itself informed her that her consent is implied, and that if she failed to consent, she would receive punishment.

> The trial court ruled:

> I believe that Ms. Ebone Wilson's consent was valid and voluntary. In fact, there are two documents that indicate her consent. I believe that the blood draw was justified under the circumstances. Louisiana law allows law enforcement officers to draw blood from a motorist who has been involved in an accident in which there is a fatality. There was consent in this case. In fact, two documents. But even past that, the law allows under Louisiana R.S. 32 : 681 (a) the operator of any motor vehicle which is involved in a collision, or an operator of any watercraft involved in a collision, crash, or other casualty, in which a fatality occurs should be deemed to have given consent to and shall be administered a chemical test or test of the blood, urine, or other bodily substances for the purposes of determining the presence of any abused substance or controlled dangerous substance as set forth in Louisiana R.S. 40 : 964, or any other impairing substance. So, point of fact, that she has given consent, additionally in accordance with this law and

8

<u>State v. Weber</u>, which has been cited by the State, I believe that the blood draw was justified and the Motion to Suppress is denied.

In her writ application, Defendant discussed *Birchfield*, stating that police should have conducted a breath test to determine her blood alcohol concentration rather than a warrantless blood draw, which, she argued, is prohibited by the Fourth Amendment.

Louisiana's implied consent law and penalties for failure to acquiesce thereto can be found in La.R.S. 32:661. That statute provides:

> A. (1) Any person, regardless of age, who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of R.S. 32:662, to a chemical test or tests of his blood, breath, urine, or other bodily substance for the purpose of determining the alcoholic content of his blood, and the presence of any abused substance or controlled dangerous substance as set forth in R.S. 40:964 in his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverages or any abused substance or controlled dangerous substance as set forth in R.S. 40:964.
>
> (2)(a) The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person, regardless of age, to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of either alcoholic beverages or any abused substance or controlled dangerous substance as set forth in R.S. 40:964. The law enforcement agency by which such officer is employed shall designate in writing and under what conditions which of the aforesaid tests shall be administered.
>
> (b) In the case of all traffic fatalities, the coroner, or his designee, shall perform or cause to be performed a toxicology screen on the victim or victims of all traffic fatalities for determining evidence of any alcoholic content of the blood and the presence of any abused substance or controlled dangerous substance as set forth in R.S. 40:964 which shall include the extracting of all bodily substance samples necessary for such toxicology screen. The coroner, or his designee, shall be responsible for ensuring the body is not removed from his custody until such time as the bodily substance samples are extracted. The coroner's report shall be made available to the investigating law enforcement agency and may be admissible in any court of competent jurisdiction as evidence of the alcoholic content of the blood and the presence of any

abused substance or controlled dangerous substance as set forth in R.S. 40:964 at the time of the fatality. The coroner, or his designee, shall determine, by the most current and accepted scientific method available, whether the presence of alcoholic content in the blood of the deceased is the result of pre-death ingestion of alcoholic beverages or the postmortem synthesis of ethanol. Nothing herein shall be construed to limit the authority of the investigating law enforcement agency from conducting an investigation of the accident scene concurrently with the coroner or his designee.

. . . .

B. Any person who is dead, unconscious or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn the consent provided by Subsection A of this section, and the test or tests may be administered subject to the provisions of R.S. 32:662.

C. (1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:

(a) His constitutional rights under Miranda v. Arizona[, 384 U.S. 436, 86 S.Ct. 1602 (1966).]

(b) That his driving privileges can be suspended for refusing to submit to the chemical test.

(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of 0.08 percent or above or, if he is under the age of twenty-one years, a blood alcohol level of 0.02 percent or above.

(d) That his driving privileges can be suspended if he submits to the chemical test and the test results show a positive reading indicating the presence of any controlled dangerous substance listed in R.S. 40:964.

(e) The name and employing agency of all law enforcement officers involved in the stop, detention, investigation, or arrest of the person.

(f) That refusal to submit to a chemical test after an arrest for an offense of driving while intoxicated if he has refused to submit to such test on two previous and separate occasions of any previous such violation is a crime under the provisions of R.S. 14:98.2 and the

10

penalties for such crime are the same as the penalties for first conviction of driving while intoxicated.

> (2) In addition, the arresting officer shall, after reading said form, request the arrested person to sign the form. If the person is unable or unwilling to sign, the officer shall certify that the arrestee was advised of the information contained in the form and that the person was unable to sign or refused to sign.

Defendant claims Tagliarino admitted that he read her the requirements that made her aware of the possible punishment for failure to consent to a warrantless blood draw or any other warrantless search. She argues that once she was read that language, she consented to the blood draw under "the pain of committing a criminal offense if she refused." Because the Supreme Court has held that motorists cannot be deemed to have consented to a warrantless blood draw "on pain of committing a criminal offense," Defendant argues, she cannot be deemed to have given valid and voluntary consent after being informed of the criminal punishment for refusing to consent to the warrantless blood draw.

Louisiana Revised Statutes 32:661, which was quoted above, sets forth Louisiana's general implied consent law. However, implied consent in cases involving fatalities is governed by La.R.S. 32:681, which provides:

> A. The operator of any motor vehicle which is involved in a collision or the operator of any watercraft involved in a collision, crash, or other casualty in which a fatality occurs shall be deemed to have given consent to, and shall be administered, a chemical test or tests of his blood, urine, or other bodily substance for the purpose of determining the presence of any abused substance or controlled dangerous substance as set forth in R.S. 40:964 or any other impairing substance.

> B. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state which is involved in a collision or to have been operating or in physical control of a watercraft on the waterways of this state involved in a collision, crash, or other casualty in which a fatality occurs. The law enforcement agency by which such

11

officer is employed shall designate in writing under what conditions the tests shall be administered.

C. In the case of all traffic or boating fatalities, the coroner, or his designee, shall perform or cause to be performed a toxicology screen on the victim or victims of all traffic fatalities for determining evidence of the presence of any abused substance or controlled dangerous substance as set forth in R.S. 40:964 or any other impairing substance which shall include the extracting of all bodily substance samples necessary for such toxicology screen. The coroner, or his designee, shall be responsible for ensuring the body is not removed from his custody until such time as the bodily substance samples are extracted. The coroner's report shall be made available to the investigating law enforcement agency and may be admissible in any court of competent jurisdiction as evidence of the presence of any abused substance or controlled dangerous substance as set forth in R.S. 40:964 or any other impairing substance at the time of the fatality. Nothing herein shall be construed to limit the authority of the investigating law enforcement agency from conducting an investigation of the accident scene concurrently with the coroner or his designee.

D. Any chemical test or tests of a person's blood, urine, or other bodily substance for the purpose of determining the presence of any abused substance or controlled dangerous substance as set forth in R.S. 40:964 or any other impairing substance shall be administered in the same manner and subject to the provisions of Part XIV of this Chapter.

Louisiana Revised Statutes 32:666 discusses refusal to submit to chemical testing, in pertinent part, as follows:

A. (1)(a)(i) When a law enforcement officer has probable cause to believe that a person has violated R.S. 14:98, 98.1, or any other law or ordinance that prohibits operating a vehicle while intoxicated, that person may not refuse to submit to a chemical test or tests if he has refused to submit to such test or tests on two previous and separate occasions of any previous such violation or in any case wherein a fatality has occurred or a person has sustained serious bodily injury in a crash involving a motor vehicle, aircraft, watercraft, vessel, or other means of conveyance. Serious bodily injury means bodily injury which involves unconsciousness, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death. The law enforcement officer shall direct that a chemical test or tests be conducted of a person's blood, urine, or other bodily substance, or perform a chemical test of such person's breath, for the purpose of determining the alcoholic content of his blood and the presence of any abused substance or controlled substance as set forth in R.S. 40:964 in his blood in such circumstances. The officer may direct a person to

12

submit to a breath test, and if indicated, an additional blood test for the purpose of testing for the presence of alcohol, abused substances, and controlled dangerous substances. A refusal of any such test or tests shall result in the suspension of driving privileges as provided by the provisions of this Part. A physician, physician assistant, registered nurse, licensed practical nurse, emergency medical technician, chemist, nurse practitioner, or other qualified technician shall perform a chemical test in accordance with the provisions of R.S. 32:664 when directed to do so by a law enforcement officer.

. . . .

(b) The law enforcement officer shall inform the person who is required to submit to such testing of the consequences of a refusal to submit to any testing as required by this Paragraph.

(c) Any person who refuses to submit to a chemical test as required by the provisions of this Paragraph shall be fined not less than three hundred dollars nor more than one thousand dollars and imprisoned for not less than ten days nor more than six months. Imposition or execution of sentence shall not be suspended unless:

(i) The offender is placed on probation with a minimum condition that he serve two days in jail and participate in a court-approved substance abuse program and participate in a court-approved driver improvement program; or

(ii) The offender is placed on probation with a minimum condition that he perform four eight-hour days of court-approved community service activities, at least half of which shall consist of participation in a litter abatement or collection program, participate in a court-approved substance abuse program, and participate in a court-approved driver improvement program. An offender who participates in a litter abatement or collection program pursuant to this Subparagraph shall have no cause of action for damages against the entity conducting the program or supervising his participation therein, including a municipality, parish, sheriff, or other entity, nor against any official, employee, or agent of such entity, for any injury or loss suffered by him during or arising out of his participation in the program, if such injury or loss is a direct result of the lack of supervision or act or omission of the supervisor, unless the injury or loss was caused by the intentional or grossly negligent act or omission of the entity or its official, employee, or agent.

(2) In all cases other than those in Paragraph (1) of this Subsection, a person under arrest for a violation of R.S. 14:98, 98.1, or other law or ordinance that prohibits operating a vehicle while intoxicated may refuse to submit to such chemical test or tests, after

13

being advised of the consequences of such refusal as provided for in R.S. 32:661(C), subject to the following:

(a) His license shall be seized under the circumstances provided in R.S. 32:667.

(b) If he is a resident without a license or permit to operate a motor vehicle in this state, the department shall deny the issuance of a license or permit to such person for a period of six months after the date of the alleged violation.

(c) Evidence of his refusal shall be admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person, regardless of age, was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages or any abused substance or controlled dangerous substance as set forth in R.S. 40:964. Additionally, evidence of his refusal shall be admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person under twenty-one years of age was driving or in actual physical control of a motor vehicle upon the public highways of this state after having consumed alcoholic beverages. However, such evidence shall not be admissible in a civil action or proceeding other than to suspend, revoke, or cancel his driving privileges.

(3) In all cases where a person is under arrest for a violation of R.S. 14:98, 98.1, or other law or ordinance that prohibits operating a vehicle while intoxicated who refuses to submit to a chemical test or tests if he has refused to submit to a chemical test on two previous and separate occasions of any previous such violation shall be advised that the consequences of such refusal shall be subject to criminal penalties under the provisions of R.S. 14:98.2.

In *State v. Weber*, 13-1851, p. 2 (La. 5/30/14), 139 So.3d 519, 521, the

Louisiana Supreme Court stated:

When an accident involving motor vehicles results in a fatality, the police need not have reasonable grounds to suspect that alcohol or drugs were involved to order a chemical test of the operator's blood, urine, or other bodily substances, as to which the operator of the vehicle is deemed by law to give his consent. La. R.S. 32:681 (A). The officer authorizing the test must, however, have reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state. La. R.S. 32:681 (B).

14

In *State v. Watts*, 14-429 (La.App. 1 Cir. 11/21/14), 168 So.3d 441, *writ denied*, 15-146 (La. 11/20/15), 180 So.3d 315, the defendant argued that the trial court erred in ruling he lawfully submitted to a blood alcohol test. He argued that pursuant to La.R.S. 32:666, prior to the 2012 amendment thereto, he had the right to refuse to submit to the blood test because there was no probable cause to believe he was operating a motor vehicle under the influence of alcoholic beverages at the time of the accident that killed the driver of the vehicle he struck. The first circuit, noting there were signs of impairment, discussed La.R.S. 32:681 and found that once police determined on the scene that defendant was the driver of the truck and a fatality had occurred, police had reasonable grounds to order defendant's blood drawn for analysis. The court stated, "Defendant, as the operator of the vehicle, was 'deemed to have given consent' to the blood test, and the trial court did not err in ruling that he lawfully submitted to the test." *Id*. at 450.

In the instant case, by virtue of La.R.S. 32:681, Defendant, as the operator of a vehicle involved in a collision resulting in a fatality, is deemed to have given consent to the blood test conducted. Additionally, under La.R.S. 32:666, Defendant could not refuse testing. Furthermore, the penalties set forth in La.R.S. 32:666 for refusal to submit to testing are inapplicable to Defendant. The forms signed by Defendant list no consequences other than suspension of Defendant's driver's license, and the license revocation procedure is a civil matter. *State v. Page*, 332 So.2d 427 (La.1975). Moreover, there was no direct testimony by Tagliarino or Sergeant Raines that they informed Defendant of any penalty regarding implied consent or refusal to submit to chemical testing. For these reasons, we find the Supreme Court's ruling in *Birchfield* is inapplicable to this matter.

The testimony of both Tagliarino and Sergeant Raines did not contain any evidence that Defendant's consent in this matter was involuntary. However, as previously noted, verbal or written consent to testing is not necessary under La.R.S. 32:666 and La.R.S. 32:681.

The trial court did not abuse its discretion in denying Defendant's motion to suppress. Accordingly, Defendant's writ application is denied.

**WRIT DENIED.**