# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-1640

_____

United States of America

*Plaintiff - Appellee*

v.

Michael Tryance Anderson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: January 18, 2019
Filed: June 12, 2019

_____

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The district court[1] sentenced Michael Tryance Anderson to 120 months' imprisonment, based in part on his involvement in an uncharged shooting. Anderson challenges the procedural and substantive reasonableness of his sentence. We affirm.

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

Anderson was arraigned on a felony drug possession charge in Missouri state court in May 2017. Two months later, he attempted to purchase a Glock .40 caliber pistol from a federally licensed firearms dealer and falsely represented that he was not then under indictment for a crime punishable by more than one year in prison. In December 2017, Anderson pleaded guilty to making a false statement to the firearms dealer in violation of 18 U.S.C. § 922(a)(6).

The probation office completed a presentence report (PSR) and calculated Anderson's advisory U.S. Sentencing Guidelines (Guidelines) range. Neither party objected to the facts as set forth in the PSR, which included that Anderson had tried to enter a club with a stolen firearm in 2011; that Anderson was found with brass knuckles and a stolen semi-automatic pistol in his vehicle in 2012; and that Anderson was found intoxicated with a loaded pistol behind the wheel of an idling car in 2017. Anderson's probation officer suggested that the district court vary downward from the advisory Guidelines range, reasoning that Anderson's criminal history had been mostly limited to fines and probation and that his upbringing involved significant financial struggles.

The government moved for an upward variance to 120 months, the statutory maximum, to protect the public from Anderson and to adequately punish him for uncharged criminal conduct. At the sentencing hearing, the government presented evidence of such conduct that occurred in November 2016 at a convenience store in Cape Girardeau, Missouri (the "Williams assault"). Alexis Williams testified that she and three friends were smoking and drinking in her car in the store parking lot. A .40-caliber Smith & Wesson sat on the center console. Shortly before midnight, Williams observed a white Chevrolet Impala pull into the parking spot across from her, wait a moment, and drive away. Approximately ten minutes later, Williams saw four armed men wearing ski masks approach her car, two on the right and two on the left. One of the firearms Williams saw was an AR-15 rifle, which Anderson later admitted belonged to him. One assailant shot at and struck the individual seated

behind Williams, whereupon Williams grabbed the gun from the console and emptied the clip by shooting to her right and left. She believed she hit someone. A police officer testified that shortly after midnight, Anderson exited a white Chevrolet Impala and checked into a nearby emergency room. He had two .40-caliber gunshot wounds to his chest. Officers later found the fully-loaded and unused AR-15 near the parking lot. Anderson was not charged in relation to the assault.

The government also presented testimony from an officer who interviewed Anderson in September 2017, at which point Anderson had told the officer about two other shootings in which he was involved. In the first, one Johnny Walker was shot and killed by an unidentified person while sitting in his vehicle outside a gas station in Cape Girardeau. Anderson, who had arrived at the gas station with Walker, was standing outside the vehicle and returned fire upon seeing the shooter. The shooter escaped and Anderson thereafter tossed his gun into the Mississippi River. Another incident involved an altercation between Anderson and Quinton Combs. According to Anderson, Combs pulled a gun and began shooting at Anderson, whereupon Anderson pulled his own weapon and fired back, killing Combs. Anderson told the officer that he subsequently gave his gun to a family member for disposal. The officer testified that, according to Anderson's account, he had acted in self-defense, and he was not charged in relation to either shooting.

The district court adopted the facts as set forth in the PSR and determined that Anderson's sentencing range under the Guidelines was 15-21 months' imprisonment. The court also concluded "beyond a reasonable doubt" that Anderson had at least aided and abetted the Williams assault. It noted that the assault was a "significantly aggravating circumstance" and that it was "very fortunate that one or more people weren't killed in this shootout." It made no findings respecting the Walker and Combs shootings. The court then considered statements by Anderson himself and by his counsel, and noted that it had "read [Anderson's] sentencing memorandum, and [had taken] all that into consideration." The court stated, "there's a need to protect

the public from Mr. Anderson's propensity to use firearms in criminal activity, especially in the instance that has been proved up today" and imposed a 120-month sentence pursuant to "the provisions of [18 U.S.C. § 3553(a)] and all the factors thereunder and for the reasons stated and by way of an upward variance." In response to Anderson's objection to the sentence, the district court replied that it had "considered every one of the factors under [§] 3553(a) at great length and as well as all the points that [Anderson] made in [his] sentencing memorandum."

We review a district court's sentencing decision for abuse of discretion. United States v. Grandon, 714 F.3d 1093, 1096 (8th Cir. 2013). We review factual findings for clear error and the district court's application of the Guidelines *de novo*. Id. At sentencing, a district court may rely on facts proved by a preponderance of the evidence. United States v. Waller, 689 F.3d 947, 958 (8th Cir. 2012) (per curiam).

Anderson first contends that the district court committed procedural error when it relied upon what Anderson argues was its finding that he had a "propensity to use firearms in criminal activity." See United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (procedural error includes "selecting a sentence based on clearly erroneous facts."). The record supports the finding that Anderson approached Williams's vehicle with a loaded AR-15 with three other masked and armed men, one of whom shot an occupant in Williams's vehicle. Moreover, the unobjected-to facts in the PSR establish that Anderson had a history of possessing stolen firearms and that he unlawfully carried a loaded and cocked 9mm handgun while sitting intoxicated in the driver's seat of an idling vehicle.[2] The court was not required to

---

[2]The district court made no findings regarding the Walker and Combs shootings and heard no evidence rebutting Anderson's self-defense claims. See United States v. Azure, 536 F.3d 922, 933 (8th Cir. 2008) ("After self defense became an issue at sentencing, the government bore the burden of establishing [the defendant] did not act in self defense by a preponderance of the evidence."). As it appears that the court did not rely on these incidents in making its finding that Anderson had a

find that Anderson had discharged the weapons he possessed to find that he had a propensity to "use" firearms, see, e.g., Mo. Ann. Stat. § 571.030(4) (defining one "unlawful use of weapons" as exhibiting a firearm in "an angry or threatening manner"), and thus we find no clear error in its finding that Anderson had a propensity to use firearms in criminal activity.

Anderson next contends that the district court committed procedural error when it failed to adequately explain its significant upward variance from the Guidelines sentencing range. See Feemster, 572 F.3d at 461 (procedural error includes "failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range"). He argues that the court improperly focused on one sentencing factor—his history and characteristics, most notably the Williams assault—to the exclusion of others, including the nature and circumstances of his nonviolent regulatory offense. Anderson asserts that the court failed to address his scant criminal history and lack of violent offense convictions, his lack of jail time, the mitigating effect of his steady employment and vocational skills, and the probation officer's recommendation of a downward variance. He contends that his variance is proportionally greater and was imposed with less justification than other such variances in the circuit.

Anderson's argument is not without some force. The district court's variance was substantial, and "a major departure should be supported by a more significant justification than a minor one." Gall v. United States, 552 U.S. 38, 50 (2007). But we have not defined with any specificity the extent to which the district court must explain the reasons for the extent of its upward variance: "all that is generally required to satisfy the appellate court is evidence that the district court was aware of the relevant factors." United States v. Perkins, 526 F.3d 1107, 1110 (8th Cir. 2008).

---

propensity to use firearms in criminal activity, we need not further discuss them.

According due respect to the district court's firsthand opportunity to assess Anderson's character, we conclude that its explanation, though perhaps testing brevity's acceptable limits, was sufficient. The court properly considered the Williams assault as part of Anderson's history and characteristics under § 3553(a). See, e.g., Waller, 689 F.3d at 960 (varying upward to impose statutory maximum based on uncharged murder). The court also explicitly noted that it had considered "at great length" the § 3553(a) factors and Anderson's sentencing memorandum, and "not every reasonable argument advanced by a defendant requires a specific rejoinder." United States v. Gray, 533 F.3d 942, 944 (8th Cir. 2008). We do not require district courts to compare the defendant with other similarly situated prior offenders, and we will uphold a sentence if, as here, "the district court's justifications for imposing a . . . sentence 'rest on precisely the kind of defendant-specific determinations that are within the special competence of sentencing courts.'" United States v. Keys, 918 F.3d 982, 989 (8th Cir. 2019) (quoting Feemster, 572 F.3d at 464). We are satisfied that the court was aware of Anderson's mitigating factors and the probation officer's suggestion despite not addressing them directly, and thus we conclude that no procedural error occurred.

Anderson also contends that his sentence is substantively unreasonable because, had he been convicted of criminal conduct related to the Williams assault, his Guidelines range maximum sentence would have increased to only 27 months' imprisonment. He argues that his lack of prior arrests and convictions also renders the variance substantively unreasonable. We consider the substantive reasonableness of Anderson's sentence for an abuse of discretion, and in so doing, we account for the totality of the circumstances and the extent of any variance from the Guidelines advisory range. See Waller, 689 F.3d at 960. There is no "heightened standard of review" for outside-Guidelines sentences. Gall, 552 U.S. at 49.

We conclude that Anderson's sentence is not substantively unreasonable. The court's sentencing discretion is not limited to what the Guidelines-range sentence

would have been had Anderson been convicted of an offense related to the Williams assault.  See United States v. Thorne, 896 F.3d 861, 866 (8th Cir. 2018) (per curiam) (rejecting defendant's argument that his sentence should have been limited to what he would have received with a higher criminal history category because "the court relied on several other sentencing factors in fashioning Thorne's sentence").  Along with the uncharged conduct, the court considered the danger Anderson posed to the community with his repeated possession and use of weapons.  In light of this record, we conclude that Anderson's sentence was a permissible exercise of the district court's broad discretion.

The sentence is affirmed.

_____