# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-1829

_____

United States of America

*Plaintiff - Appellee*

v.

Jeffery A. Winder, also known as Jeff A. Winder

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: January 11, 2024
Filed: April 4, 2024

_____

Before SMITH, Chief Judge,[1] GRUENDER and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Jeffrey A. Winder challenges the district court's[2] denial of his motion to suppress. We affirm.

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri, adopting the report and recommendation of the

## I.

Winder and Heather "Nikki" Durbin checked into the motel at Hood's Service Center early one morning in March 2021. During check-in, the motel manager, Gary McCullough, advised Winder that his room rental would be terminated if he engaged in any illegal activity.

The next morning, McCullough entered Winder's room to clean because he was expected to stay another night. No one was in the room at the time. McCullough noticed that the box spring of one of the beds in the room had been moved, and when he went to realign it, he observed a brown canvas backpack under the box spring. Believing it may have been left by a prior guest, McCullough pulled out the backpack and opened its flap. Inside, he saw a freezer bag with "long pieces" of what appeared to be methamphetamine. McCullough left the backpack where it was, exited the room, locked the door behind him, and called 911 to report that he "had discovered drugs in a room." He considered Winder evicted at that time.

Greene County Sheriff's Deputy Toby Smith was first on the scene, and Deputy Kelsey Whitcomb and Sergeant Long arrived shortly after him. McCullough reported to Deputy Smith that one of the beds in Room 209 was off-center and recounted how he had found the backpack and the illegal drugs that he believed to be inside of it. The officers requested McCullough's permission to enter the room. McCullough gave them "full permission" and unlocked the door.[3]

Deputy Smith and Sergeant Long entered the room first. Deputy Smith went straight to the bathroom to check for any potential threats; he saw the backpack as he entered but did not notice if it was open. Sergeant Long went directly to the

_____

Honorable David P. Rush, United States Magistrate Judge for the Western District of Missouri.

[3]According to the affidavit in support of the search warrant, McCullough also communicated the motel's policy "that if any violation of their rules to include criminal activity occurs, the rental agreement . . . is terminated." However, it is not clear when in the course of events this conversation occurred.

backpack. When Deputy Smith returned from the bathroom, the backpack was open, and the plastic bags of suspected methamphetamine and the bottom of a pistol's magazine were visible. Deputy Smith and Sergeant Long left the room so that Deputy Whitcomb and her canine partner, Zeke, could enter to see if Zeke alerted for drugs in the backpack. He did.

The officers then paused their investigation to obtain a search warrant. After obtaining a warrant, they recovered three gallon-sized Ziploc bags of methamphetamine and a 9-millimeter handgun from the backpack. The officers then left the room and waited nearby for Winder and Durbin to return. Meanwhile, McCullough rekeyed the door so that Winder and Durbin would not be able to get back into the room. When they returned, Durbin came to the front office to let McCullough know that her key was not working. McCullough told her that a search warrant had been executed and offered to call one of the detectives to speak to her. Durbin quickly left, got back in her vehicle, picked up Winder, and started driving toward the highway. Officers immediately pulled them over. After removing Winder from the vehicle, the deputies seized another handgun from his car seat, as well as additional methamphetamine and plastic baggies from under his seat.

Winder was arrested and indicted on four counts related to his possession of the drugs and guns. He moved for suppression of all evidence arising out of the deputies' initial warrantless search of the motel room, arguing that his Fourth Amendment rights were violated by the search and seizure of the motel room and his backpack. A suppression hearing was held before a magistrate judge, who issued a report and recommendation that the motion to suppress be denied. Over Winder's objection, the district court adopted and supplemented the magistrate judge's report and recommendation, concluding that Winder was evicted at the moment McCullough decided to expel him and that the officers had probable cause for a warrantless search of the backpack based on McCullough's statements about a brown bag in the room that contained drugs.

Winder conditionally pleaded guilty to one count of possession of methamphetamine with intent to distribute and one count of possession of a firearm

in furtherance of a drug trafficking crime, preserving his right to appeal the denial of his motion to suppress. *See* Fed. R. Civ. P. 11(a)(2). He was sentenced to 228 months' imprisonment. He now appeals the denial of his motion to suppress.

## II.

"In considering [the] denial of a motion to suppress evidence, we review the district court's conclusions of law *de novo* and its factual findings for clear error." *United States v. Molsbarger*, 551 F.3d 809, 811 (8th Cir. 2009) (internal quotation marks omitted). The Fourth Amendment of the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. And "[a]s a rule, searches and seizures are unreasonable unless accompanied by a warrant." *United States v. Chipps*, 410 F.3d 438, 442 (8th Cir. 2005). Winder argues that his Fourth Amendment rights were violated in three ways: (1) he was not "lawfully ejected" prior to the officers' search of his room, (2) the officers' initial warrantless search exceeded the scope of McCullough's search, and (3) officers' subsequent reentry into the room and use of a drug dog before obtaining a warrant further violated Winder's Fourth Amendment rights.

We first consider his argument that the officers' initial entry and search of the motel room was unlawful. The Supreme Court and this circuit have been clear that the Fourth Amendment's protection against warrantless searches "appl[ies] with equal force to a properly rented hotel room during the rental period." *United States v. Rambo*, 789 F.2d 1289, 1295 (8th Cir. 1986); *see also Hoffa v. United States*, 385 U.S. 293, 301 (1966) (concluding motel rooms can as "clearly be the object of Fourth Amendment protection . . . as a home or an office"). However, "once a guest has been *justifiably* expelled, the guest is without standing to contest an officer's entry into his hotel room on Fourth Amendment grounds . . . because, upon eviction, the rental period terminates and control over the hotel room reverts to management." *United States v. Peoples*, 854 F.3d 993, 996 (8th Cir. 2017) (internal quotation marks and citation omitted). One basis for justifiable expulsion arises when an occupant is evicted in manner permitted by and consistent with state law. *See id.* ("[J]ustification

-4-

for . . . evictions may come from state statutes authorizing the removal of guests under certain circumstances.").

Under Missouri law, "[a]n owner or operator of a hotel may eject a person from the hotel and notify the appropriate local law enforcement authorities . . . [if] [t]he owner or operator reasonably believes that the individual is using the premises for an unlawful purpose." Mo. Rev. Stat. § 315.075(3). Winder does not contend that McCullough's private search was unlawful, and he concedes that, in light of section 315.075(3), McCullough had cause and authority as the motel manager to eject Winder after the discovery of the backpack and its illegal contents. However, Winder argues that McCullough had not yet done so when he allowed the officers to enter and search the room.

In *Peoples*, we made clear that whether an ejection under section 315.075(3) has taken place does not turn on the physical removal of an individual from a motel room. 854 F.3d at 995. Instead, the motel room occupants' reasonable expectation of privacy terminated at the time when the "motel clerk handed [the police officer] the [room] key" to go remove them. *Id.* Our decision in that case neither identified nor relied upon any explicit statement by the motel clerk that he had evicted the occupants. *Id.* at 997. We instead found that the record as a whole "demonstrate[d] that, in giving the key to [an officer], the clerk wanted the occupants of the room removed." *Id*.

As in *Peoples*, the record in this case sufficiently establishes Winder's lawful ejection prior to the officers' initial entry into the room. McCullough notified Winder at check-in that illegal activity would lead to his eviction. McCullough then found drugs in Winder's room. At that point, McCullough considered their rental agreement "null and void" and Winder evicted. McCullough then took further actions consistent with that belief. He contacted the authorities, as expressly permitted by section 315.075(3). He let deputies into the room. And then, as soon as they left, he rekeyed the lock to prevent Winder's reentry. These facts establish Winder was ejected prior to the officers' initial entry. Thus, Winder has no standing to challenge the search of the room.

Winder takes the view that this evidence is insufficient. He points out that there is no evidence establishing that McCullough explicitly told the officers that Winder had been evicted prior to allowing them to access the motel room. He further notes that McCullough did not reach out to Winder to notify him that he was being evicted. According to Winder, these facts make this case analogous to *Stoner v. California*, 376 U.S. 483, 489-90 (1964). There, a hotel clerk granted police access to search a guest's rented room after the police told hotel management that the guest was a suspect in a robbery. The Supreme Court determined that this violated the guest's Fourth Amendment rights. *Id.* But, in that case, there was no indication that the hotel clerk intended to eject the guest—let alone that the clerk had the authority to do so under the applicable state law. *See id.* at 487-88. It is thus inapposite.

Winder also argues more broadly that section 315.075(3) does not authorize a motel operator to eject someone "in his mind." Put differently, he contends that "some action beyond the mere decision to evict . . . [is] required to 'eject' a guest from a motel room." However, McCullough was not required to say magic words to eject Winder or to give the officers the authority to enter the hotel room. *See Peoples,* 854 F.3d at 995; *see also United States v. Bohmont*, 413 F. App'x 946, 950-51 (8th Cir. 2011) (finding defendant had no reasonable expectation of privacy in the hotel room he rented after he was arrested and hotel security asked police officers to enter the room). And though Winder points out that "the Eighth Circuit cases finding justifiable ejection from a motel room all involve some action toward" the removal of individuals from a rented room, this is not because ejection requires physical removal. In each of the cases he cites, one or more individuals were in the motel room at issue at the time of the ejection. Their physical removal was a practical necessity, not a legal prerequisite. *See Rambo*, 789 F.2d at 1295; *Young v. Harrison*, 284 F.3d 863, 865-66, 869 (8th Cir. 2002); *Bohmont*, 413 F. App'x at 950-51. No authority identified by Winder stands for the proposition that physical removal is required to effect an ejection under Missouri law. Winder's arguments do not change our conclusion that he was ejected prior to the officers' initial entry.

Next, Winder argues that, even if the officers' entry into the motel room was proper, their search of his backpack violated the Fourth Amendment because it

exceeded the scope of McCullough's private search. We have previously noted that it is a close question whether an individual loses his expectation of privacy in locked luggage stored in a motel room from which he has been evicted. *See Rambo*, 789 F.2d at 1296. In this case, however, Winder's backpack was not locked, and McCullough had already seen that it contained a bag full of what appeared to be methamphetamine.

Winder emphasizes that it is not clear from the record whether his backpack was open with contraband visible when the officers entered the room or if the backpack's flap had fallen closed after McCullough looked inside of it. "Because a private search frustrates . . . an expectation [of privacy], . . . an ensuing police intrusion that stays within the limits of the private search is not a search for Fourth Amendment purposes." *United States v. Miller*, 152 F.3d 813, 815 (8th Cir. 1998) (internal citation omitted); *see also United States v. Starr*, 533 F.3d 985, 995 (8th Cir. 2008) ("When the government re-examines materials following a private search, the government may intrude on an individual's privacy expectations without violating the Fourth Amendment, provided the government intrusion goes no further than the private search."). There is no dispute that McCullough, as a private actor, opened the backpack flap, looked inside, and saw a plastic bag containing what appeared to be methamphetamine. So, even if the officers reopened the backpack flap, they did not exceed the scope of McCullough's search by doing so.

Once the backpack flap was opened, the plain-view doctrine applied. Under the plain-view doctrine, officers may seize any contraband so long as "they are lawfully present in a place to view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." *United States v. Hayes*, 7 F.4th 925, 928 (8th Cir. 2023) (internal citation omitted). We know from McCullough that the first bag of methamphetamine was visible as soon as the flap was opened. Thus, the officers had the right to seize it. Even if the other bags or the gun only became visible when Sergeant Long—the first officer to reach the bag—touched or moved the first bag of methamphetamine, their subsequent seizure would not violate the Fourth Amendment because the plain-view doctrine authorized him to seize the first bag. *See United States v. Lloyd*, 396 F.3d

948, 954 (8th Cir. 2005) ("Objects in plain view of an officer properly in position to view the objects may be seized . . . ." (citing *Harris v. United States*, 390 U.S. 234, 236 (1968))).  This argument also fails.

Finally, because Winder's challenges to the initial search of the room and backpack fail, so too does his argument that the officers' subsequent reentry and use of a drug dog in the room violated his Fourth Amendment rights.  *See United States v. Mendoza*, 677 F.3d 822, 828 (8th Cir. 2012) ("It is well settled that a drug-dog sniff, without more, is not a search within the meaning of the Fourth Amendment." (internal quotation marks omitted)).

## III.

For the foregoing reasons, Winder's Fourth Amendment rights were not violated, and the motion to suppress was properly denied.  We affirm the judgment of the district court.

_____