# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-1700
_____

United States of America

*Plaintiff - Appellee*

v.

Antjuan Dante Britton

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Eastern
_____

Submitted: February 16, 2024
Filed: May 2, 2024
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

BENTON, Circuit Judge.

A jury convicted Antjuan Dante Britton of possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court[1]

_____

[1]The Honorable Peter D. Welte, Chief Judge, United States District Court for the District of North Dakota, adopting the report and recommendation of the Honorable Alice R. Senechal, United States Magistrate Judge for the District of North Dakota.

sentenced him to 240 months in prison and 10 years of supervised release. He appeals the denial of his pretrial motion to suppress. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In January 2020, a tipster told Grand Forks Narcotics Task Force Officer Nathan Moen that Britton had sold methamphetamine to two women in the Grand Forks, North Dakota area. The tipster gave Officer Moen the license plate number for Britton's rental car. He contacted the rental company, confirming that Britton had rented the car.

A few days later, the tipster texted Officer Moen that Britton was at an apartment building in Grand Forks. Arriving at the building, Officer Moen could not locate him. Later that day, the tipster told Officer Moen that Britton had sold drugs at the apartment complex that day and would return there a few days later. Officer Moen went to the apartment building a few days later. He saw a rental vehicle with Michigan license plates. Through the rental company, he confirmed the car was rented to Britton.

With the information provided by the tipster, Officer Moen applied for and obtained a ping warrant for Britton's cellphone. In early February, Grand Forks County Sheriff's Office deputies located and stopped Britton. They arrested him on an outstanding warrant and searched his vehicle. They did not find drugs or evidence of illegal activity.

A couple of weeks after Britton's arrest, law enforcement arrested a woman with a lengthy criminal history for possession of meth. Cooperating, she indicated Britton was her source of meth, selling to her about 20 times. She told them the hotel where Britton stayed when he sold drugs in the area. Law enforcement independently corroborated that Britton had stayed there five times in January. She agreed to be a confidential informant (CI). A week later, another woman was

arrested. She also said Britton was her meth source. The two women, who both referred to Britton as "D," provided consistent statements about his drug-dealing in Grand Forks. Their statements matched the tipster's information from January.

At the end of February, the CI contacted Officer Moen and said Britton offered to sell her meth in Fargo. Officer Moen began planning a controlled buy. He and two other officers met with the CI. During the meeting, the CI negotiated a deal with Britton on the phone. The CI agreed to pay him $5,000 for this deal and $1,000 for an earlier deal. During the recorded calls, the agents heard only the CI.

Officer Moen coordinated with agents in Grand Forks to help execute the controlled buy. Fargo Officer Kyle Hinrichs was the case agent responsible for facilitating communication among the CI, an undercover officer, and 12 to 15 other agents.

Before the buy, the officers met with the CI for a briefing. Both the CI and the undercover officer wore transmitters. The buy was originally planned for a McDonald's in Fargo. Just before the buy, Britton requested a change of location. They agreed to the West Acres Mall. Agents moved to the mall parking lot, which was nearly empty.

While in the parking lot, agents heard the CI speaking to Britton on the phone. During the call, they saw a blue Charger arrive with a man on a cell phone and a woman in the passenger seat. The CI told the undercover officer that the man in the Charger was Britton. Agents began watching the Charger. They saw two people get out—one wearing a white shirt and the other wearing dark clothing. Inside the mall, Britton met with the CI and the undercover officer. The undercover officer recognized Britton from a photograph. Officers kept an eye on the Charger, and one of them confirmed it was a rental.

In the mall, Britton and the CI began walking around. The undercover officer followed but could not hear their conversation. At one point, he lost contact with

the CI for about 5 minutes when she and Britton entered a store. When reunited, the CI told the undercover officer she had paid Britton money to discharge her prior debt, but he did not give her the drugs. She said he wanted her to pay the remaining money in the mall. The undercover officer refused because he was worried Britton would not give her the meth. He and the CI walked to their car.

In the car, the CI talked to Britton on the phone, requesting to rekindle the deal near his Charger. Britton refused. He asked the CI to come back inside the mall. The undercover officer called off the deal. The CI told Britton she was leaving. They saw Britton leave the mall. Other agents also saw Britton leave the mall and jog to his car. Before he reached it, officers activated their lights and siren on an unmarked vehicle, ordered Britton to the ground, and handcuffed him. Officer Moen called Britton's parole officer, asking that she authorize a search of his vehicle. She did. A trained canine also arrived and gave a full alert for drugs on the passenger side of the Charger. Law enforcement searched and found a pound of meth.

II.

Britton argues the court erred in denying his motion to suppress because neither the arrest nor the search was supported by probable cause. Reviewing the denial of a motion to suppress, this court reviews legal conclusions de novo and factual findings for clear error. *United States v. Woods*, 747 F.3d 552, 555 (8th Cir. 2014). This court will affirm "unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." *Id*.

"The Fourth Amendment prohibits 'unreasonable searches and seizures.'" *United States v. Mendoza*, 691 F.3d 954, 957 (8th Cir. 2012). "Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions." *United States v. Williams*, 616 F.3d 760, 764 (8th Cir. 2010). The automobile exception is one exception. *Id*. It "authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains

evidence of criminal activity." ***United States v. Davis***, 569 F.3d 813, 816 (8th Cir. 2009).

A warrantless arrest must also be supported by probable cause. ***United States v. Winarske***, 715 F.3d 1063, 1066 (8th Cir. 2013). Determining probable cause, courts "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." ***Id***. "Arresting officers are not required to witness actual criminal activity or have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest." ***Id***. at 1067. "Instead, the mere probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, is all that is required." ***Id***. (internal quotation marks omitted).

## A.

The district court found probable cause for Britton's arrest based on his arrival at the "predicted time and place of the deal." It explained:

> The officers identified Britton's vehicle when he arrived at the mall and drove past Agent Grube and TFO Caro in an otherwise almost empty parking lot. When Britton entered the mall without the methamphetamine, it was natural to infer he left it in his vehicle. The absence of a completed transaction inside the mall did not extinguish the likelihood that Britton had arrived at the mall to sell methamphetamine. It was, after all, the undercover officer—not Britton—who called off the deal. Britton remained interested in completing the sale until the end, asking the informant to come back inside the mall with the remaining five-thousand dollars. Britton's actions generated sufficient reason to believe there was methamphetamine in his vehicle. A sale was not required to take place before an arrest because "officers are not required to witness actual criminal activity or have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest." *Winarske*, 715 F.3d at 1067.

-5-

In addition to his arrival at the mall, several other facts known to officers at the time supported probable cause to arrest Britton. Three different individuals told TFO Moen they had bought drugs from Britton. (Doc. 54, pp. 13-16, 18-19, 20). Two of the individuals provided information about Britton that was confirmed by Agent Moen, including Britton's rental vehicle having a Michigan license plate, where he stayed in East Grand Forks, and the location of his rental car at a specific time and location. Britton was also known to be on parole for possession of a controlled substance with intent to deliver. (Doc. 49-2). Taken together, these facts and Britton's arrival at the mall gave officers probable cause to believe he possessed methamphetamine in his vehicle.

The probable cause finding is supported by precedent. In *Winarske*, a CI lined up a controlled firearm purchase from the defendant, a felon. *Winarske*, 715 F.3d at 1065-66. Law enforcement corroborated the CI's information, including the defendant's name, criminal history, and supervision status. *Id*. The CI said the defendant would arrive at a mall in Bismarck, North Dakota with his girlfriend to sell the firearm. *Id*. The CI described the defendant's vehicle. *Id*. at 1066. Law enforcement arrested the defendant when he arrived. *Id*. This court found probable cause for the warrantless arrest. *Id*. at 1066-68.

Britton argues the officers lacked "reasonable trustworthy information" because the CI here had a criminal record and had made racist comments.[2] But, this court has upheld probable cause for a search warrant based on partial corroboration despite an informant's credibility issues. *See United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992) ("[W]here the informants' information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause."). Like *Winarske*, the CI provided accurate information to law enforcement about how long Britton had sold drugs in Grand Forks and where he stayed when he did so. *Winarske*, 715 F.3d at 1067 (holding that an informant's

---

[2]In her cell phone contacts list, the CI used a racial slur to identify Britton, who is Black. During interviews with law enforcement, she said she could not stand Black people and was "a racist piece of shit sometimes."

past reliable information" can prove "sufficiently reliable to support a probable cause determination"). And officers corroborated this information. They verified he stayed at the hotel the CI mentioned five times in January 2020. And they corroborated that he sold her meth through interviews with the tipster and the other woman arrested for possession. *See United States v. Jackson*, 898 F.2d 79, 81 (8th Cir. 1990) (holding that two anonymous "tips were mutually corroborative"). Both the CI and the other woman arrested for possession separately referred to Britton as "D," consistent with his middle name. *See United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) ("[I]t is well established that even the corroboration of minor, innocent details can suffice to establish probable cause.").

More significantly, probable cause was not based solely on the CI's information. Agents were present for the controlled buy. They observed the CI and Britton arrange the deal on the phone. They saw Britton arrive at the CI's predicted time and location. The undercover officer confirmed Britton's identity and observed his demeanor in the mall—noting it was consistent with a drug sale. Officers listened to the CI and Britton try to salvage their deal over the phone. After the deal fell apart, agents saw Britton jog back to his Charger.

The district court did not err in finding probable cause for the arrest.

B.

The district court found the search of Britton's car justified under the automobile exception because there was probable cause for his arrest and probable cause that drugs were in his Charger. The automobile exception "authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *Davis*, 569 F.3d at 816. "An officer has probable cause if, given the totality of the circumstances, a reasonable person could believe that there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Pacheco*, 996 F.3d 508, 513 (8th Cir. 2021) (internal quotation marks omitted).

As discussed, Britton's arrival at the set time and place of the drug deal, along with other known and corroborated facts, gave law enforcement probable cause to arrest him.  This information also provided probable cause to believe the meth he agreed to sell the CI was in his vehicle.  *See **Winarske***, 715, F.3d at 1068 (holding that Winarske's presence at the arranged meeting place constituted probable cause to believe he possessed a weapon "either on his person or in his vehicle at the time of the meeting").

The district court did not err in finding probable cause to search the vehicle.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____