# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-1249

———————————————

United States of America

*Plaintiff - Appellee*

v.

Kevon Spratt

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Northern District of Iowa - Western

——————————

Submitted: January 15, 2025
Filed: June 20, 2025

——————————

Before LOKEN, ARNOLD, and KELLY, Circuit Judges.

——————————

KELLY, Circuit Judge.

The government charged Kevon Spratt with nine counts related to a string of robberies that occurred in and around western Iowa over the course of approximately one month in fall 2022. After the jury returned a mixed verdict, the district court[1]

———————————

[1]The Honorable Leonard T. Strand, then Chief Judge, United States District Court for the Northern District of Iowa.

imposed a total sentence of 432 months and five years of supervised release. Spratt appeals, and we affirm.

## I.

After his arrest on November 14, 2022, Spratt was ultimately charged in a nine-count indictment. The charges were based on four robberies or attempted robberies: a bank robbery in Onawa, Iowa, on October 21, in violation of 18 U.S.C. § 2113(a) (Count 1); a gas station robbery in Sergeant Bluff, Iowa, on October 22, in violation of 18 U.S.C. § 1951 (Hobbs Act robbery) (Count 3); a robbery of a Check Into Cash in Sioux City, Iowa, on October 24, in violation of 18 U.S.C. § 1951 (Count 5); and an attempted bank robbery in Salix, Iowa, on November 14, in violation of 18 U.S.C. § 2113(a) (Count 7). For each of these offenses, the government also charged Spratt with using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (ii) (Counts 2, 4, 6, 8). Count 9 charged Spratt with unlawful possession of a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

Spratt moved to dismiss Count 8 and to suppress the evidence seized from his car at the time of his arrest. The district court denied both motions,[2] and the case proceeded to trial. The jury acquitted Spratt on Counts 1 and 2 and convicted him on all others. Spratt appeals his convictions and his sentence.

## II.

Spratt first argues the district court erred in denying his motion to suppress. "In considering [the] denial of a motion to suppress evidence, we review the district court's conclusions of law *de novo* and its factual findings for clear error." United

---

[2]The district court adopted without modification the reports and recommendations of the Honorable Kelly K.E. Mahoney, Chief Magistrate Judge, United States District Court for the Northern District of Iowa.

States v. Winder, 97 F.4th 1103, 1106 (8th Cir. 2024) (alteration in original) (quoting United States v. Molsbarger, 551 F.3d 809, 811 (8th Cir. 2009)).

On November 14, 2022, Officer Patrick Tisher with the Sioux City Police Department initiated a stop of a silver Toyota Solara with a black top, which Spratt was driving. Spratt was arrested, and officers searched his car, finding evidence connecting him to a string of robberies. Spratt argues Tisher lacked probable cause, and that the stop and subsequent search of his car violated the Fourth Amendment.

Officers may conduct a warrantless arrest if they have "probable cause to believe that someone has committed or is committing a crime." United States v. Winarske, 715 F.3d 1063, 1066 (8th Cir. 2013). To determine whether an officer had probable cause, we consider all of the circumstances and the trustworthy information known to the officer at the time of the arrest. United States v. Webster, 625 F.3d 439, 442 (8th Cir. 2010). We "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." United States v. Britton, 101 F.4th 538, 542 (8th Cir. 2024) (quoting Winarske, 715 F.3d at 1066).

Detective Michael Sitzman, also with the Sioux City Police Department, had been investigating the October 24 Check Into Cash robbery. Ultimately, he matched the suspect vehicle depicted in surveillance footage from that robbery to a vehicle with license plates associated with Spratt. On November 11, Sitzman sent out a department-wide email saying that he believed a man named "Kavon Spratt" was responsible for the Check Into Cash robbery, and possibly two other robberies in nearby cities. The email described Spratt's vehicle as "a silver 2 door Toyota Solara, IA: LMP334, with a black rag top."

Tisher received this information prior to November 14. Specifically, he knew that a "silver . . . Toyota . . . two-door car with a black hard top" was suspected of being involved in at least one robbery, and possibly others.

On November 14, someone attempted to rob a bank in Salix, just "south" of where Tisher was stationed on duty that day. Given the multiple recent robberies, Tisher and other law enforcement officers thought it was possible that Spratt and his silver vehicle might have been involved in the attempted robbery. So Tisher stayed "in the area . . . to see if maybe that vehicle would show up in [his] location."

Meanwhile, Brent Rosendahl, Assistant Chief of the Sergeant Bluff Police Department, was also on duty. When he learned of the attempted robbery in Salix, he started looking for Spratt's silver vehicle along a route he suspected it would take if driving out of Salix. Rosendahl saw a silver vehicle with a dark top drive by, Rosendahl followed it, and observed that its license plate number matched the one connected to Spratt. Rosendahl did not immediately stop the vehicle, but continued to follow it, giving dispatch updates on his location as he waited for backup to arrive.

Rosendahl was soon joined by several other officers in separate vehicles, all following the silver vehicle. At some point, Tisher heard over his radio "that Sergeant Bluff had picked up the possible vehicle," so he drove to the reported location, where he saw a "cavalcade" of law enforcement officers following the silver Toyota.

Spratt argues that Tisher lacked probable cause to stop the Toyota because, at the time of the stop, "he had no description of the vehicle involved in the Salix robbery." But even if Tisher lacked probable cause to stop the Toyota based on the attempted robbery in Salix, he and Rosendahl collectively had probable cause to believe the car was involved in—at the least—the October 24 Check Into Cash robbery. Tisher knew that a silver, two door car with a hard black top was involved in the October 24 robbery, and Rosendahl knew that the license plate on the vehicle they stopped matched the license plate of the vehicle associated with the October 24 robbery. And there was "some degree of communication" between Tisher and Rosendahl: both relied on information from the Sioux City Police Department, and Tisher identified and located the suspect vehicle based on Rosendahl's updates to dispatch. See United States v. Edwards, 891 F.3d 708, 711–12 (8th Cir. 2018)

-4-

("[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication." (quoting United States v. Horne, 4 F.3d 579, 585 (8th Cir. 1993))); United States v. Robinson, 664 F.3d 701, 704 (8th Cir. 2011) (explaining that the requirement that there be "some degree of communication" "serves to distinguish between officers functioning as a 'search team' and officers acting as independent actors who merely happen to be investigating the same subject" (quoting United States v. Gillette, 245 F.3d 1032, 1034 (8th Cir. 2001))).

The district court did not err in denying Spratt's motion to suppress.

III.

Next, Spratt argues the district court erred in denying his motion to dismiss Count 8, which charged him with use of a firearm during and in relation to a crime of violence—specifically, an attempted bank robbery—in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (ii). We review the district court's denial de novo. See United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008).

Spratt argues Count 8 is legally insufficient because, in his view, attempted bank robbery under 18 U.S.C. § 2113(a) is not a crime of violence. See United States v. Steffen, 687 F.3d 1104, 1117 (8th Cir. 2012) (affirming dismissal of indictment for failure to state an offense). As relevant here, § 924(c)(3)(A) defines a crime of violence as "an offense that is a felony and . . . has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

Section 2113(a) provides:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another . . . any . . . money . . .

belonging to . . . any bank . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a). Spratt notes that one can commit an attempted bank robbery by means of "intimidation," and argues on appeal that "intimidation" does not require "the use, attempted use, or threatened use of physical force" against another person or property. But this argument is foreclosed by our precedent. We have repeatedly explained that intimidation requires "a threat of physical force." See Estell v. United States, 924 F.3d 1291, 1292–93 (8th Cir. 2019); see also Kidd v. United States, 929 F.3d 578, 581 (8th Cir. 2019) (per curiam); United States v. Harper, 869 F.3d 624, 626 (8th Cir. 2017).

Spratt also argues the indictment did not "charge[] [him] with a statutory crime." He relies on the fact that his indictment charged him with bank robbery "by force, violence, *and* intimidation," while the statutory language is "by force and violence, *or* by intimidation." But this argument also fails: "[a]n indictment may be phrased in the conjunctive, when the statute . . . [is] phrased in the disjunctive." United States v. Spencer, 592 F.3d 866, 873–74 (8th Cir. 2010) (quotation omitted). We affirm the district court's denial of his motion to dismiss Count 8 of the indictment.

IV.

Next, Spratt argues the district court improperly admitted evidence under Federal Rule of Evidence 404(b)[3] regarding two uncharged robberies on October 16 and November 11. We review for abuse of discretion. See United States v. Nyah, 35 F.4th 1100, 1108 (8th Cir. 2022).

---

[3]The district court alternatively found that the evidence of the uncharged robberies was intrinsic to the charged offenses, but for reasons we explain below, we need not consider this alternative rationale.

"Rule 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts 'to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" United States v. White, 816 F.3d 976, 982 (8th Cir. 2016) (quoting Fed. R. Evid. 404(b)). But "this same evidence . . . 'may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" Id. (quoting same). Evidence is admissible under the Rule "if '(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value.'" United States v. Williams, 796 F.3d 951, 959 (8th Cir. 2015) (quoting United States v. Robinson, 639 F.3d 489, 494 (8th Cir. 2011)).

Spratt makes two arguments. First, he argues the government failed to present sufficient evidence to show he was responsible for the uncharged robberies. The government, as the proponent of the evidence, had to submit sufficient evidence from which "a reasonable jury could find by a preponderance of the evidence that . . . [Spratt] committed the prior act[s]." United States v. Winn, 628 F.3d 432, 436 (8th Cir. 2010); see also United States v. Brumfield, 686 F.3d 960, 963 (8th Cir. 2012).

Here, the jury saw multiple connections between Spratt and the two additional robberies, including items found in his car, his physical characteristics, and his social media posts. For example, in both uncharged robberies, the suspect used a black handgun with a gold ejection port consistent with the one found in Spratt's car and posted on his social media. The suspect in both robberies also drove a silver vehicle with a black top, matching the description of Spratt's car, and wore a black face-covering consistent with the black shirt found in his car. The suspect in the October 16 robbery had a tattoo on his hand consistent with Spratt's tattoo and wore black sweatpants with a white Nike emblem, consistent with sweatpants Spratt wore in pictures he posted on his social media. The suspect in the November 11 robbery wore a black glove with a white band at the bottom, like a glove found in Spratt's

car. And the jury heard a voice sample showing Spratt's distinctive speech pattern, which aligned with testimony by an employee present during the November 11 robbery who believed the robber had an accent. This cumulation of evidence is sufficient to meet the government's burden.

Second, Spratt argues the government offered this evidence for an improper purpose—to prove his character in an effort to show that he "acted in accordance with th[at] character" when he committed the charged robberies. See Fed. R. Evid. 404(b); White, 816 F.3d at 982. But evidence of other crimes, wrongs, or acts may be admissible to "establish[] identity if a reasonable juror could conclude that the same person committed both [the charged offense and the other crime, wrong, or act]." United States v. Stenger, 605 F.3d 492, 499 (8th Cir. 2010). A reasonable juror could so conclude "[i]f the conduct underlying the prior act and the current charged offense involved a unique set of 'signature facts.'" United States v. Almendares, 397 F.3d 653, 662 (8th Cir. 2005) (quoting United States v. Carroll, 207 F.3d 465, 468 (8th Cir. 2000)). But "[a] viable modus operandi theory must show a pattern of behavior that is 'sufficiently idiosyncratic' to make the acts 'clearly distinctive' from other instances of the same criminal behavior." United States v. Battle, 774 F.3d 504, 513 (8th Cir. 2014) (quoting Carroll, 207 F.3d at 468).

Here, the uncharged and charged robberies share "a unique set of 'signature facts.'" Almendares, 397 F.3d at 662 (quotation omitted). In all but one, the suspect used a distinctive black handgun with a gold ejection port.[4] Multiple law enforcement officers testified they had never seen a gun that looked like it before, and one said he had seen one only once before and that it was "very rare." See Stenger, 605 F.3d at 500 (looking to, among other things, the use of an "especially unusual" firearm). In all of the robberies, the suspect drove a silver car with a black top. In all but two of the robberies, the suspect wore a black glove with a white band at the bottom. See United States v. Young, 701 F.3d 1235, 1238–39 (8th Cir. 2012)

---

[4]Notably, the one robbery that did not involve a black handgun with a gold ejection port was the October 21 robbery for which Spratt was acquitted.

(noting the suspect wore the same type of shirt and baseball cap in the charged and previous robberies). Finally, all of the robberies took place within one month and about fifty miles from one another. See Almendares, 397 F.3d at 662 (considering "the distance between the crimes in space and time" and concluding seven-month gap and fifteen-mile distance supported similarities). Based on the multiple similarities, the uncharged robberies were relevant in establishing identity under Rule 404(b).

The district court did not abuse its discretion in admitting the contested evidence.

V.

Spratt also argues there was insufficient evidence to convict him on Counts 3–8, highlighting the fact that the jury acquitted him on Counts 1 and 2—the Onawa bank robbery and corresponding gun charge. Spratt contends his convictions resulted in "inconsistent verdicts," because the acquittals contradict the government's theory at trial that the same person committed all of the charged and uncharged robberies. But even assuming the verdicts are inconsistent, we have repeatedly held that "when considering what are characterized as inconsistent verdicts . . . we only ask whether the government presented sufficient evidence to support the conviction[s]." United States v. Opare-Addo, 486 F.3d 414, 416 (8th Cir. 2007); see also United States v. Trejo, 831 F.3d 1090, 1093 (8th Cir. 2016). "This is because '[w]e are reluctant to delve into the minds of the jurors to determine the reasons for apparently inconsistent verdicts.'" United States v. McDonald, 826 F.3d 1066, 1073 (8th Cir. 2016) (per curiam) (quoting Opare-Addo, 486 F.3d at 416). Spratt does not otherwise challenge the sufficiency of the evidence on the counts on which he was convicted. We see no basis for reversal.

## VI.

Finally, Spratt challenges his sentence. He first argues the district court erred when it found him responsible for the two uncharged robberies when determining his sentence. See United States v. Anderson, 926 F.3d 954, 957 (8th Cir. 2019) ("procedural error includes 'selecting a sentence based on clearly erroneous facts'" (quoting United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc))). But as discussed in connection with Rule 404(b), a reasonable jury could have found by a preponderance of the evidence that Spratt committed the uncharged robberies. Thus, at sentencing, the district court did not clearly err in finding the same. See United States v. Grandon, 714 F.3d 1093, 1096 (8th Cir. 2013) (explaining factual findings are reviewed for clear error); United States v. Hogue, 66 F.4th 756, 764–65 (8th Cir. 2023) (explaining sentencing courts may rely on relevant uncharged conduct "supported by a preponderance of the evidence").

Second, Spratt argues the district court imposed a substantively unreasonable sentence when it varied above the advisory Guidelines range. We review for abuse of discretion. See United States v. Wilson, 122 F.4th 317, 325 (8th Cir. 2024). "A district court abuses its discretion if it: '(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'" United States v. Watley, 46 F.4th 707, 716 (8th Cir. 2022) (quoting United States v. Petersen, 22 F.4th 805, 807 (8th Cir. 2022)).

Spratt contends the district court failed to adequately consider mitigating circumstances, such as his difficult childhood and medical problems. But the district court expressly acknowledged these factors and said they did not "come close to explaining his very violent conduct as an adult." The district court also described the offense conduct as "hugely aggravating": in a period of one month, Spratt committed "five armed bank robberies, demonstrating violence, threats, [and] in many cases pressing the gun into the body or pointing it at the head of a victim." The district

court also expressed concern about Spratt's criminal history, which included aggravated robbery and pointing a firearm at a victim during a separate theft attempt.

District courts have wide latitude in weighing the relevant sentencing "factors and assign[ing] some factors greater weight than others," United States v. Obi, 25 F.4th 574, 582 (8th Cir. 2022), and disagreement with how the district court weighed the various sentencing factors, alone, is not enough to show an abuse of discretion, see United States v. Campbell, 986 F.3d 782, 800 (8th Cir. 2021). On this record, we see no failure to consider a relevant factor, no consideration of an improper or irrelevant factor, and no clear error of judgment in weighing the relevant factors.

VII.

We affirm Spratt's convictions and sentence.[5]

———————————————

---

[5]We decline to consider Spratt's claim of ineffective assistance of counsel in this direct appeal. See United States v. Hansen, 111 F.4th 863, 868 n.2 (8th Cir. 2024).